646 So.2d 754 (1994)
Charles DENMARK, Appellant,
v.
STATE of Florida, Appellee.
Rodney THOMPSON, Appellant,
v.
STATE of Florida, Appellee.
Baron WOODS, Appellant,
v.
STATE of Florida, Appellee.
Mario HUMPHREY, Appellant,
v.
STATE of Florida, Appellee.
Nos. 93-00980, 93-01171, 93-01222 and 93-01258.
District Court of Appeal of Florida, Second District.
October 12, 1994.
Rehearing Denied December 8, 1994.
*755 John E. Swisher, St. Petersburg, for appellant Denmark.
Stephanie J. Young, Eurich Z. Griffin, and John W. Boult of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa, for appellant Thompson.
Warren H. Husband and Gary L. Sasso of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., St. Petersburg, for appellant Woods.
Sylvia H. Walbolt and Richard B. Campbell of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., St. Petersburg, for appellant Humphrey.
Robert A. Butterworth, Atty. Gen., Tallahassee, Brenda S. Taylor, Asst. Atty. Gen., and William I. Munsey, Jr., Asst. Atty. Gen., Tampa, for appellee.
LAZZARA, Judge.
The appellants, Charles Denmark, Rodney Thompson, Baron Woods, and Mario Humphrey, challenge their judgments and sentences for premeditated first-degree murder imposed after a joint jury trial. We agree with their common claim that the trial court erred by allowing the jury to consider, in support of the state's theory of premeditation, evidence of collateral criminal incidents preceding the victim's death which was not linked to them. Accordingly, because we conclude that the erroneous admission of this evidence was not harmless beyond a reasonable doubt, we reverse and remand for a new trial as to each appellant.
In view of our resolution of this common issue, we have consolidated the appeals for purposes of our opinion. We need not address the other common issues raised in support of reversal because they are either rendered moot by our disposition or are unlikely to reoccur at retrial. We also need not discuss the insufficiency of the evidence claim posed by Denmark and Woods since this issue will occur in a different context on retrial. See State v. Powell, 636 So.2d 138, 143 (Fla. 1st DCA 1994) (discussing circumstantial proof necessary to support finding of premeditation). We reject, however, Humphrey's claim that the trial court erred in refusing to suppress his confession.
The victim in this case met his death in a nighttime drive-by shooting while attempting to cross a street on his way to a public park. The state's evidence showed that the appellants, along with seven other individuals not on trial, came upon the scene in a car and a van, with the van in front. The van was driven by Humphrey and contained six of the individuals. The other appellants rode in the car, which was driven by the seventh individual. Thompson was in the right-front seat, Denmark was in the right-rear seat, and Woods was in the left-rear seat. Just before the shooting, both vehicles decreased their speed. All of the appellants and some of the other individuals then discharged firearms in a random manner out of both sides of the vehicles in the vicinity of the victim and other persons. As the vehicles drove away from the scene of the shooting, gunfire erupted behind them.
The victim, who was located on the drivers' side of the street, was killed by a single gunshot to the back. There was no witness who actually saw him get shot. Moreover, because the fatal bullet was never recovered, there was no proof establishing who fired the shot that killed the victim.
The state's theory of premeditation was based on its claim that this murder was the culmination of a long-standing feud between residents of two different neighborhoods. To support this theory, the state offered, over *756 objection, the testimony of a police officer and another witness regarding their familiarity with, and the lengthy duration of, this ongoing feud. Neither witness, however, linked any of the appellants to the alleged animosity between the two neighborhoods.
The state also offered evidence, over objection, demonstrating specific, violent criminal acts committed over the course of the week preceding the victim's death. These acts consisted of a robbery with a firearm, an attempted murder with a firearm, an aggravated assault with a firearm, two random shooting incidents at a party attended by approximately one hundred persons, and two separate incidents of shooting into a motor vehicle, one of which was occupied at the time by three individuals. The state never claimed that any of the appellants committed these violent acts, only that they were aware of them. According to the state's theory, these incidents arose from this continuing feud and motivated the appellants to retaliate by planning and carrying out a random drive-by shooting in the victim's neighborhood.
To further support its theory, the state elicited objected-to testimony from the landlord of one of the individuals not on trial. According to this witness, approximately one-half hour prior to the shooting, he went to his tenant's apartment to collect rent.[1] While there, he overheard someone in a group of five to seven young men who were loading firearms state something about "getting even." The witness further testified that he observed these individuals, some of whom were armed, enter a white car, which he described as a medium-sized version of a Taurus or Chevrolet, and a customized van and drive away. Based on his concern for what he had heard and observed, he immediately reported this incident to the police.
The witness was unable, however, to identify any of the appellants as being members of this group. He could only identify his tenant.[2] Thus, there was no testimony from this witness either attributing the statement of "getting even" to the appellants or showing that they authorized it.
To further bolster its theory of premeditation, the state presented the testimony of the driver of the car, who was charged with second-degree murder as a result of his participation in this incident. This witness testified that Denmark, Thompson, and Woods arrived at his house approximately one hour before the shooting in a white Chevrolet Cavalier that Woods had rented earlier that day.[3] The witness observed a variety of firearms in the car. There was no discussion, however, of what they planned to do that evening. All of them then drove to another location where Woods left in the Cavalier. When Woods returned a short time later, he was followed by a van driven by Humphrey and occupied by the six other individuals not on trial. The van contained an assortment of firearms. The witness was not expecting the van.
The witness stated that he, Denmark, and Thompson approached the van and heard one of the occupants of the van (the tenant referred to previously) state that he wanted to "squash it." The witness further testified that this individual was referring to the events of the preceding week, including the crime committed against him, and his desire to stop the violence that had occurred. Although the appellants were present when this statement was made, the witness never attributed it to any of them.
Later in his testimony, this witness acknowledged that it was his understanding that "squash it" means to "talk it out" and to "end it" and not to shoot or kill anyone. He also acknowledged that, despite being with this group prior to the shooting, he had no prior indication that anyone in it was about *757 to embark on a shooting spree. Had he known of such an intent, he would not have accompanied the group. The Cavalier and the van then left for the fatal encounter with the victim.
The trial court also allowed the state, again over objection, to present testimony that clearly demonstrated that approximately one hour before the shooting, Woods drove Humphrey to a local mall where Humphrey later stole the van that was used in the drive-by shooting. There was no evidence, however, linking either Woods or Denmark and Thompson to this theft.
It is the well-established law of this state that "[a]s a general rule, evidence of wrongdoing on the part of a third party is inadmissible as irrelevant to a given case." Jenkins v. State, 533 So.2d 297, 300 (Fla. 1st DCA 1988), review denied, 542 So.2d 1334 (Fla. 1989). Such evidence "is not relevant to the crime charged and is highly prejudicial by inferring criminal conduct on the part of defendant from criminal conduct of a third party." Armstrong v. State, 377 So.2d 205, 206 (Fla. 2d DCA 1979). In this case, the record clearly reflects, and the state concedes, that the violent criminal acts preceding the victim's death were committed by third parties.
The state argues, however, that this evidence was necessary to establish for the jury the factual context which motivated the appellants to commit premeditated first-degree murder. We recognize that such evidence may be admissible for this purpose under section 90.402, Florida Statutes (1991), which provides that "[a]ll relevant evidence is admissible, except as provided by law."[4] As interpreted, this section permits the introduction of evidence of uncharged crimes which are inseparable from or inextricably intertwined with the crime charged. Griffin v. State, 639 So.2d 966, 968 (Fla. 1994). Such evidence derives its relevancy from the fact that it "explains or throws light upon the crime being prosecuted." Tumulty v. State, 489 So.2d 150, 153 (Fla. 4th DCA), review denied, 496 So.2d 144 (Fla. 1986). Thus, "to prove its case, the State is entitled to present evidence which paints an accurate picture of the events surrounding the crimes charged." Griffin, 639 So.2d at 970.
In this case, however, the state made the evidence of these multiple, separate acts of violence, some of which were extreme in nature, a key feature throughout every stage of the trial but never sufficiently linked it to the appellants. Consequently, any probative value it may have had was substantially outweighed by the danger of its unfair prejudice, as well as its tendency to confuse and mislead the jury, and it should have been excluded under section 90.403, Florida Statutes (1991).[5]Jenkins v. State, 533 So.2d 297.
We conclude, in that regard, that there is a reasonable possibility that the prejudicial "spill-over" effect of this evidence may have caused the jury to infer that because random acts of violence were a common way-of-life among other residents of appellants' social milieu, the appellants must be guilty as charged of the violent act for which they were on trial or, indeed, even of some of these prior acts. See Jenkins v. State, 533 So.2d 297; Rolle v. State, 431 So.2d 326 (Fla. 3d DCA 1983); Chapman v. State, 417 So.2d 1028 (Fla. 3d DCA 1982). Such a species of evidence creates a real danger of establishing guilt by societal association and should not be allowed because of its tendency to prejudicially distort a jury's perception of an accused. See Banks v. State, 400 So.2d 188 (Fla. 1st DCA 1981). See also Lowder v. State, 589 So.2d 933, 935 (Fla. 3d DCA 1991), appeal dismissed, 598 So.2d 78 (Fla. 1992) ("The only purpose of testimony regarding criminal behavior patterns `is to place prejudicial and misleading inferences in front of the jury.'"); Kellum v. State, 104 So.2d 99, 103 (Fla. 3d DCA 1958) (evidence that other police officers committed larceny irrelevant in prosecution of police officer for larceny as tending "to cause the jurors to consider that crime with which the defendant was charged was one of a series or wave of offenses by policemen").
*758 Moreover, the prejudicial nature of this evidence was further exacerbated by the testimony of the two witnesses that tended to link these acts to a continuing enmity between the two neighborhoods without any substantial competent evidence that the appellants were aware of this animosity. Thus, this evidence of third-party criminal activity should have been excluded "under basic fundamental rules of evidence." Hirsch v. State, 279 So.2d 866, 869 (Fla. 1973).[6]
We also conclude that the testimony of the landlord that an unknown person made a threat to "get even" shortly before the murder was likewise inadmissible because the state failed to establish the appellants' connection to this threat by clear and convincing evidence. See Rozier v. State, 636 So.2d 1386 (Fla. 4th DCA 1994). The failure of the state to prove such a nexus, especially when the statement was made while individuals were arming themselves with lethal weapons and thus conveyed the obvious intent to do immediate bodily harm, created the risk that the appellants would be convicted based on prejudicial considerations of "apparent bad character instead of evidence concerning the offense with which [they were] charged." Rozier, 636 So.2d at 1389.[7] Thus, the probative value of this third-party threat was far outweighed by its prejudicial impact and should have been excluded. See State v. Price, 491 So.2d 536 (Fla. 1986).
Finally, we conclude that the trial court erred in admitting testimony showing that Humphrey stole the van that was later used in the shooting. Again, there was no evidence linking the other appellants to this theft and it therefore constituted "irrelevant other-crimes evidence" as to them. West v. State, 579 So.2d 288, 289 (Fla. 3d DCA 1991). As to Humphrey, such testimony was also irrelevant under section 90.402. Evidence of his theft of the van, even though the theft occurred immediately prior to the shooting, bore absolutely no relevancy to the only critical material fact at issue: whether he committed premeditated first-degree murder. How Humphrey acquired the van added nothing in terms of explaining or throwing light upon his state of mind at the time of the murder.[8] Thus, since the only relevance of this evidence was to demonstrate the bad character or criminal propensity of Humphrey, it should have been excluded. McCrae v. State, 395 So.2d 1145 (Fla. 1980), cert. denied, 454 U.S. 1041, 102 S.Ct. 583, 70 L.Ed.2d 486 (1981).
We have reviewed the record in light of the principles of State v. Lee, 531 So.2d 133 (Fla. 1988), and State v. DiGuilio, 491 So.2d 1129 (Fla. 1986), and the impact this impermissible collateral crimes evidence may have had on the jury's verdict as to each appellant. Recognizing that the erroneous admission of this type of evidence is presumed to be harmful error, Castro v. State, 547 So.2d 111 (Fla. 1989), we are unable to conclude beyond a reasonable doubt that the prejudicial nature of this evidence did not affect the outcome of the case. The permissible evidence supporting premeditation was not overwhelming and, as in Henry v. State, 574 So.2d 73 (Fla. 1991), would support the conclusion that each of the appellants may only be guilty of a lesser degree of homicide. See Hooker v. State, 497 So.2d 982 (Fla. 2d DCA 1986), review denied, 506 So.2d 1041 *759 (Fla. 1987); Pressley v. State, 395 So.2d 1175 (Fla. 3d DCA), review denied, 407 So.2d 1105 (Fla. 1981). Thus, there is more than a reasonable possibility that the erroneous admission of this evidence, without sufficient evidentiary linkage to each of the appellants, distorted "the jury's perception of appellant[s] by focusing on the illegal acts of [other persons]." Richardson v. State, 566 So.2d 33, 34 (Fla. 1st DCA 1990).
We are acutely aware of the random violence occurring on an all too-frequent basis in our neighborhoods, as evidenced by the facts of this case. We also know that to stem this tide of ever-increasing violence, it is essential that those who perpetrate it must be vigorously prosecuted and appropriately punished upon conviction. We are not free to ignore, however, in the proper discharge of our appellate duties, fundamental principles of justice which are designed to insure "that the minds of jurors must not be poisoned and prejudiced against [a defendant] by receiving evidence of another collateral crime committed by a defendant not on trial." Hirsch, 279 So.2d at 868 (quoting Hirsch v. State, 268 So.2d 441, 445 (Fla. 1st DCA 1972) (Rawls, J., dissenting opinion)). Accordingly, we are compelled to reverse the appellants' judgments and sentences and remand for a new trial as to each.
Reversed and remanded for new trials.
DANAHY, A.C.J., and PATTERSON, J., concur.
NOTES
[1] This individual had been the victim of one of the prior criminal acts (armed robbery) and was one of the passengers in the van who participated in the shooting.
[2] Two hours after the shooting, this witness observed his tenant return in a white car with other individuals whom he could not identify. Although he was unsure if it was the white car he had seen earlier in the evening, he was positive that it had a North Carolina license plate. He then reported this incident to the police.
[3] According to the owner of this car, it had a Florida license plate issued in Hillsborough County.
[4] Relevant evidence is defined as "evidence tending to prove or disprove a material fact." § 90.401, Fla. Stat. (1991).
[5] This section provides in pertinent part that "[r]elevant evidence is inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, [or] misleading the jury, ..."
[6] We note, parenthetically, that this evidence was also inadmissible under the Williams rule, which derives its name from Williams v. State, 110 So.2d 654 (Fla.), cert. denied, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 86 (1959), and is codified in section 90.404(2)(a), Florida Statutes (1991). In utilizing this rule, the state is required to prove by clear and convincing evidence that the defendant on trial committed the uncharged crime. Audano v. State, 641 So.2d 1356, 1358-60 (Fla. 2d DCA 1994). Moreover, "[t]he Williams rule, on its face, is limited to `similar fact evidence.'" Griffin, 639 So.2d at 968 (emphasis in original) (quoting section 90.404(2)(a)).
[7] We perceive no meaningful difference between this threat and a third-party threat against a witness not attributable to or authorized by a defendant, which Rozier held to be impermissible evidence of a collateral crime. Thus, we conclude that the threat in this case, under the circumstances in which it was made, also constituted impermissible evidence of a collateral crime.
[8] Nor, again, was this collateral crime admissible as Williams rule evidence under section 90.404(2)(a). The uncharged theft of the van clearly did not constitute "similar fact evidence" in relation to the charged crime of first-degree murder. Griffin v. State, 639 So.2d 966.