730 So.2d 809 (1999)
Justin A. BECKETT, Appellant,
v.
STATE of Florida, Appellee.
No. 97-2077.
District Court of Appeal of Florida, Fourth District.
April 7, 1999.
*810 Richard L. Jorandby, Public Defender, and Paul E. Petillo, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Rochelle L. Kirdy, Assistant Attorney General, West Palm Beach, for appellee.
TAYLOR, J.
Justin Beckett was charged by information with committing an aggravated assault and aggravated battery upon Ryan Adrian with his car. The trial court entered a judgment of acquittal on the aggravated assault count, but the jury found the defendant guilty of aggravated battery. On appeal, the defendant contends that the court erred by allowing the state to introduce evidence that the defendant's father sprayed the victim with gasoline one week before the incident that led to his criminal charges. Because we find that no prejudicial error was committed in this case, we affirm the judgment of conviction.
The 18-year old victim, Ryan Adrian, was walking across the street on his way to the mall around 3:30 or 4:00 in the afternoon. As he crossed the street, he saw the defendant drive past him and then make a sudden U-turn. Adrian stood on the median and watched in fear as the defendant sped his car towards him while waving what appeared to be a machete out the window. Adrian last recalled seeing the defendant's car jump over the curb before he regained consciousness in the hospital.
At trial, the victim testified that about a week before he was struck by the defendant's car, he confronted the defendant and accused him of threatening the victim's 15-year old sister. The victim told the defendant to stop threatening his sister and warned that if he did not, they would have to fight each other. When the victim started to testify about a later encounter with the defendant's father, defense counsel objected, stating "Your Honor, what his father happened to do on some other occasion has nothing to do with this incident. My client wasn't present. Even if he was present, [it] has nothing to do with this incident."
The state responded that the testimony concerning the defendant's father was inextricably intertwined with events that led up to the charged offenses. The prosecutor explained that there was an ongoing feud between the families of the victim and the defendant. After the victim threatened to fight the defendant for threatening his sister, the defendant's father got involved. The defendant's father pulled out a bottle of gasoline, informed the victim that he was part of the Aryan Nation, and doused the victim with gasoline. Afterwards, arrangements were made for the families to participate in mediation to settle their differences. Shortly *811 before the scheduled conference, however, the defendant battered the victim with his car. The prosecutor assured the court, "I will not try to paint Mr. Beckett in a bad light because of something his father did. It all pieces together. It is inextricably intertwined." The court overruled the defense objection and admitted the testimony concerning the gas-spraying incident.
Defendant contends that the testimony concerning his father's conduct one week before the automobile battery incident was not relevant and highly prejudicial. According to the defendant, the admission of evidence of his father's "other bad acts" caused the jury to unfairly infer criminal conduct on the defendant's part, and, thus, constituted reversible error. The state argues that the probative value of the evidence of the gas spraying incident outweighed any prejudice and was inextricably intertwined with the other evidence necessary for the state to prove its case.
A trial court is given broad discretion when making a determination as to whether to admit or exclude evidence. That decision will not be overturned absent an abuse of discretion. See Traina v. State, 657 So.2d 1227 (Fla. 4th DCA 1995). Florida Statutes, section 90.401 (1997), defines relevant evidence as "evidence tending to prove or disprove a material fact." Relevant evidence is generally admissible unless its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, misleading the jury, or needless presentation of cumulative evidence. See § 90.403, Fla. Stat. (1997).
Generally, "evidence of wrongdoing on the part of a third party is inadmissible as irrelevant to a given case." Denmark v. State, 646 So.2d 754 (Fla. 2d DCA 1994), quoting Jenkins v. State, 533 So.2d 297, 300 (Fla. 1st DCA 1988), rev. denied, 542 So.2d 1334 (Fla.1989). See also Armstrong v. State, 377 So.2d 205 (Fla. 2d DCA 1979); Hirsch v. State, 279 So.2d 866 (Fla.1973); Kellum v. State, 104 So.2d 99 (Fla. 3d DCA 1958). In Denmark, the second district reversed the convictions of defendants charged with first degree murder upon determining that the trial court erred in allowing the jury to consider evidence of collateral crimes, preceding the victim's death, which were not linked to the defendants. The state's theory of premeditation for the first degree murder charges in Denmark was that the murder was a culmination of a long-standing feud between residents of two different neighborhoods. The defendants, however, were never linked to this alleged animosity. Over defense objection, the state adduced evidence of specific violent criminal acts committed over the course of the week preceding the victim's death and made it a key feature of the trial. The state did not claim that any of the defendants committed these crimes; it sought to establish their awareness of the violence and show the factual context of the neighborhood feud to provide a motive for the defendants to commit murder. The second district reversed and remanded for a new trial, finding that any probative value of the evidence of the collateral crimes not linked to the defendants was outweighed by the danger of unfair prejudice and a tendency to confuse or mislead the jury. The court stated that there was a reasonable possibility that the prejudicial "spill over" effect of this evidence may have caused the jury to infer that, because random acts of violence were a way of life among other residents and members of the defendants' social group, the defendants must be guilty as charged or guilty of some of the prior acts. The appellate court noted that:
It is the well-established law of this state that "[a]s a general rule, evidence of wrongdoing on the part of a third party is inadmissible as irrelevant to a given case." Such evidence "is not relevant to the crime charged and is highly prejudicial by inferring criminal conduct on the part of defendant from criminal conduct of a third party."
Id. at 757 (citations omitted).
Here, unlike in Denmark, where the defendants were never linked to the neighborhood feud, the defendant was tied to the animosity between his family and the victim's family. Evidence of the defendant's father's criminal conduct was, nonetheless, unnecessary to show this animosity or to prove that the defendant intentionally hit the victim *812 with his car. The issue in this case was whether the defendant drove his car towards the victim with the intention of striking him. The gas-spraying incident occurred a week before the charged offense. The defendant was not present when it happened and there is no evidence in the record suggesting that the defendant knew about his father's actions or participated in them in any way. Thus, the probative value of the father's confrontation with the victim was insufficient to overcome the potential for prejudice of this testimony. We conclude, therefore, that the court erred in admitting this evidence.
We find, however, that the defendant has not met his burden of demonstrating that the error was prejudicial. See section 924.051(7), Fla. Stat. (1997); Mason v. State, 719 So.2d 304 (Fla. 4th DCA 1998); Goodwin v. State, 721 So.2d 728 (Fla. 4th DCA 1998). As we recently stated in Mason, prejudicial error is defined in section 924.051(1)(a), Florida Statutes (1997), as "an error in the trial court that harmfully affected the judgment or sentence." While it is possible, as the defendant suggests, that a "spill over" effect of this evidence may have caused the jury to infer "like father, like son" and unfairly convict the defendant, section 924.33 provides that "... [i]t shall not be presumed that error injuriously affected the substantial rights of the appellant." In this case, the state was careful to point out to the jury that the father's conduct was not in any way attributable to the defendant. Further, unlike the prosecutor in Denmark, the state here did not repeatedly refer to the gasoline dousing incident during the trial or make it a feature of the trial.
Moreover, unlike Denmark, wherein the court found that the evidence supporting premeditation for murder was not overwhelming, there was abundant evidence in this case indicating that the defendant was guilty of aggravated battery. One eyewitness testified that he was stopped at the intersection when he saw the defendant make a U-turn, bounce off the curb, drive up on the median where the victim was standing, and strike him. He observed that the car did not try to slow down and felt that the defendant "was trying to hit that kid." Another eyewitness said she saw the defendant swerve his car, make a U-turn, and hang outside his car window while brandishing "what looked like a billy club." She recalled thinking "Oh, God, he's going to hit this kid," and seconds later seeing "blood pouring down off the young fellow-in-the-street's face."
The defendant's girlfriend was a passenger in the car when the defendant struck the victim. She testified that the defendant was waving an encased machete at the victim as they approached him. She also denied that the victim threw anything at them and admitted earlier telling the police that the victim had thrown a rock at them because the defendant had prompted her to falsely say that he did.
Officer Cassidy testified that when he arrived at the scene he saw the victim lying on the roadway, unconscious, being treated by paramedics. After the officer advised the defendant of Miranda warnings, the defendant acknowledged hitting the victim but claimed that he lost control of his vehicle and accidentally struck him. However, an accident investigator, Officer Wilkenson, testified that there were no skid marks or other evidence indicating that the defendant lost control of his vehicle or made any attempts to slow down or turn before hitting the victim. On the contrary, the evidence at the scene showed that the car accelerated in a straight line and never wavered from its path. Officer Wilkenson offered his opinion that it was not an "accident."
As stated earlier, the victim testified that he was standing on the median as defendant made a U-turn, aimed his car towards him, and "charged" at him. He said he was scared of getting hit by the car as it came faster and faster in his direction. He never heard the tires screech, as though the defendant were braking. Rather, he heard the engine roar "like he floored the gas." The next thing the victim remembered was waking up in the hospital.
Based on the foregoing, we find that the defendant has not carried his burden of demonstrating that the error in admitting testimony of wrongdoing by the defendant's father harmfully affected the verdict in this *813 case. Accordingly, we affirm the judgment of conviction and sentence.
AFFIRMED.
POLEN and GROSS, JJ., concur.