2000-NMCA-028

999 P.2d 421

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Tina PHILLIPS, Defendant–Appellant.**

**No. 19,990.**

Court of Appeals of New Mexico.

Feb. 29, 2000.

Certiorari Denied, No. 26,222,
March 31, 2000.

Patricia A. Madrid, Attorney General, Patricia Gandert, Assistant Attorney General, Santa Fe, for Appellee.

Phyllis H. Subin, Chief Public Defender, Susan Gibbs, Assistant Appellate Defender, Santa Fe, for Appellant.

## OPINION

BOSSON, Judge.

{1} Defendant appeals from her criminal convictions for possession of drug paraphernalia and possession of methamphetamine. *See* NMSA 1978, § 30–31–23 (1990) (controlled substance); NMSA 1978, § 30–31–25.1 (1997) (paraphernalia). In this opinion, we first discuss the elements of constructive possession in the context of a shared living arrangement and the evidence required to sustain a conviction. Second, we discuss whether the trial court erred under evidentiary Rules 11–403 and 11–404(B) NMRA 2000, by permitting the State to introduce evidence of drug possession and distribution by other residents who were on the premises at the time of the search. We affirm Defendant's convictions.

## BACKGROUND

{2} Acting on a confidential informant's tip, Farmington police secured a warrant to search a mobile home for narcotics. In the course of the search, the police seized methamphetamine, marijuana, and drug paraphernalia from various locations within the mobile home. Several people including Defendant were arrested inside the mobile home. As a result of the search, the owner of the mobile home pleaded guilty to distribution of methamphetamine. His son was charged with possession of marijuana recovered from his pocket during the search. Another occupant had drug paraphernalia in his pocket and was charged with possession.

{3} Defendant lived with James Ambrose in one small bedroom of the mobile home. They had lived together for over a year and had resided in the mobile home for a couple of months. Both Defendant and Ambrose were present at the time of the search. While searching this particular bedroom, the police discovered methamphetamine and drug paraphernalia in two small boxes located in a dresser drawer. Ambrose pleaded guilty to possession, but Defendant denied possession claiming that the seized drugs and paraphernalia belonged to Ambrose and not to her. Both at the time of the search and later, Ambrose consistently supported Defendant's denial by asserting exclusive ownership of all illicit material in the bedroom.

{4} Ambrose's claim of exclusive ownership was hotly contested at trial. During the search, Ambrose had been unable to provide the police with specific details when questioned about the contents of the dresser drawer. For example, while Ambrose described a yellow box in the dresser drawer containing some syringes and possibly some left over methamphetamine, he could not elaborate in any further detail. In contrast, the police inventory of the dresser drawer revealed two boxes, one yellow and one turquoise, both containing multiple syringes, one loaded with methamphetamine solution ready to inject, 1.4 grams of methamphetamine powder, two small spoons, two large spoons, two bowls, cotton balls, scales, and two vials of what appeared to be nail polish remover.

{5} At trial, the State maintained that Ambrose was lying to protect Defendant and that both Defendant and Ambrose had joint, constructive possession of all the drugs and paraphernalia in the bedroom. Defendant conceded that she had used methamphetamine in the past with Ambrose, and she acknowledged to the police that she knew about the syringes in the boxes. However, Defendant denied actual knowledge of the methamphetamine discovered in those same boxes. The officer who took Defendant's statement testified at trial that, in his opinion, the drugs belonged to both Ambrose and Defendant, and that Ambrose was covering for Defendant.

{6} Before trial, Defendant filed a motion in limine seeking, among other things, to exclude from evidence any mention of drugs found in the possession of other occupants of the mobile home. Defense counsel argued the motion in limine the morning of trial, and the court denied the motion with respect to drugs found in the possession of the other occupants. The court did exclude other evi-

dence not relevant to this opinion. As a result of the court's ruling, the State was allowed to elicit evidence that all the other occupants were caught with drugs at the time of the search, and that the mobile home was therefore a "drug house." On appeal, Defendant challenges the admission of this evidence of criminal acts by third parties, claiming that she was convicted on a theory of guilt by association. Before discussing the evidentiary issues, we turn first to the State's theory of constructive possession.

## DISCUSSION

{7} Defendant's first challenge on appeal goes to the sufficiency of the evidence that she constructively possessed the drugs found in her room. To resolve a sufficiency of the evidence claim, this Court reviews the evidence in the light most favorable to the prevailing party, resolving all conflicts and granting all inferences in a manner that supports the decision below. *See State v. Sanders,* 117 N.M. 452, 456, 872 P.2d 870, 874 (1994). Circumstantial evidence may be sufficient to support a verdict for constructive possession, as long as a rational jury "has necessarily found the hypothesis of guilt more reasonable than any of the theories of innocence advanced by the defendant." *State v. Chandler,* 119 N.M. 727, 732, 895 P.2d 249, 254 (Ct.App.1995). When evidence is insufficient to find a defendant guilty beyond a reasonable doubt, then the verdict violates constitutional due process rights and dismissal of the charge is warranted. *See State v. Hernandez,* 1997–NMCA–006, ¶ 38, 122 N.M. 809, 932 P.2d 499; *see also Jackson v. Virginia,* 443 U.S. 307, 316, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

### Constructive Possession

{8} Constructive possession exists when the accused has knowledge of drugs or paraphernalia and exercises control over them. *See State v. Brietag,* 108 N.M. 368, 370, 772 P.2d 898, 900 (Ct.App.1989). When the accused does not have exclusive control over the premises where the drugs are found, the mere presence of the contraband is not enough to support an inference of constructive possession. *Id.* at 371, 772 P.2d at 901. Additional circumstances or incrimi-

nating statements are required. *Id.* The accused's own conduct may afford sufficient additional circumstances for constructive possession. *See State v. Donaldson,* 100 N.M. 111, 119, 666 P.2d 1258, 1266 (Ct.App.1983). It is undisputed that "[t]wo or more people can have possession of an object at the same time." UJI 14–130 NMRA 2000. Even if someone else claims possession of the drugs and exercises control over them, the accused "could also have had sufficient knowledge and control to be in constructive possession." *State v. Muniz,* 110 N.M. 799, 802, 800 P.2d 734, 737 (Ct.App.1990).

{9} In this case, Defendant did not have exclusive control over the bedroom; she shared it with Ambrose. Accordingly, we must examine the evidence for "additional facts that connect the defendant to the location of the drugs," beyond the mere presence of contraband on the premises. *Brietag,* 108 N.M. at 371, 772 P.2d at 901.

{10} Perhaps the most damaging evidence against Defendant is the inventory of paraphernalia seized from the dresser drawer. There were two boxes, two small spoons, two large spoons, two bowls, two vials of what appeared to be nail polish remover, and numerous syringes. Except for the numerous syringes, all of the paraphernalia were in pairs. Even the syringes had a paired, color coding scheme; some were gold and others silver. A jury could rationally infer from the duplicate sets that one set belonged to Defendant and the other to Ambrose, and that they shared the 1.4 grams of methamphetamine together. These additional circumstances, beyond the mere presence of drugs, are exactly what helps create an inference of constructive possession. *Compare Brietag,* 108 N.M. at 370–71, 772 P.2d at 900–01 (dismissing possession charge when no additional circumstances linked the accused to drugs), *with Muniz,* 110 N.M. at 800–02, 800 P.2d. at 735–37 (finding that the defendant's statements provided sufficient inference of constructive possession).

{11} In addition, the jury was reasonably entitled to assume that there was only one dresser in this small bedroom and that it was likely shared by both residents. Neither Defendant nor any other witness described

more than one dresser. A police officer testified that Ambrose's pay check stub and some "jewelry items" were on the top of the dresser, but other than the contraband at issue the contents of the dresser are not part of the record. *Cf. Muniz,* 110 N.M. at 801, 800 P.2d at 736 (finding that mere silence concerning other contents of a room does not defeat an inference of constructive possession). Although Defendant's belongings were in the bedroom, she claimed that she "hardly ever looked in the [dresser] drawer." The jury, of course, was free to discredit this claim and could rationally have concluded that Defendant was well aware of the dresser's contents and shared it with Ambrose.

{12} Aside from the physical evidence, the State also put forth Defendant's own incriminating statements. At the time of the police search, Defendant admitted knowing of the paraphernalia discovered in the dresser drawer. She conceded using drugs with Ambrose in the past, although she denied knowing of the particular drugs seized during the search. After the police advised Defendant of her *Miranda* rights, she questioned the validity of her arrest stating, "Excuse me, you know I thought that in order to be charged with possession [of drugs], you actually had to have it on you." The State later used this statement as a tacit admission of possession, and an example of Defendant's disingenuousness. While Defendant characterizes this statement as merely a profession of her innocence, the jury was not required to believe her version of events. It could have seen the statement as contrived, and an example of Defendant knowing more than she acknowledged about the items seized from her room. *See State v. Roybal,* 115 N.M. 27, 30, 846 P.2d 333, 336 (Ct.App.1992) (leaving resolution of the conflicts in the testimony and the credibility of witnesses to the jury). We believe a rational jury could have inferred from all these statements, taken together, that Defendant knew of all the contraband in her room and likely shared control over it with Ambrose.

{13} We observe that other jurisdictions have ruled in a similar fashion regarding constructive possession in shared living arrangements. For example, in *People v.*

*Monson,* 255 Cal.App.2d 689, 63 Cal.Rptr. 409, 411 (1967), the accused moved in with her boyfriend and lived there for three or four months. Upon searching the residence, police found a small pan containing heroin in a hallway closet. *Id.* Although the accused admitted using drugs with her boyfriend, she denied knowledge of the heroin claiming to be unaware of "where it came from." *Id.* The Court found that her "disclaimer of knowledge where the narcotic came from did not have to be accepted," and concluded that the evidence was sufficient to support her conviction. *Id.* at 412; *see also State v. Zimpher,* 552 S.W.2d 345, 349 (Mo.Ct.App. 1977) (finding that marijuana found in the dresser drawer and bedside stand drawer in shared bedroom warranted joint possession conviction due to mutual access for their personal effects); *State v. Weiss,* 73 Wash.2d 372, 438 P.2d 610, 612–13 (1968) (sustaining constructive possession conviction in a shared residence when there was testimony as to the accused's past drug usage there). *See generally* Emile F. Short, Annotation, *Conviction of Possession of Illicit Drugs Found in Premises of Which Defendant Was in Nonexclusive Possession,* 56 A.L.R.3d 948 (1974).

{14} Finally, Defendant continues to rely on her own testimony and that of Ambrose to prove that he alone possessed the drugs in the bedroom. However, the jury was free to " 'use their common sense to look through testimony and draw inferences from all the surrounding circumstances.' " *Chandler,* 119 N.M. at 731, 895 P.2d at 253 (quoting *United States v. Davis,* 562 F.2d 681, 688 (D.C.Cir. 1977) (per curiam)).

> To assert that one can divest himself of constructive possession by treating the drugs as belonging to a roommate and having no intent of exercising dominion and control over the drugs may have some force as an abstract proposition; but the jury [was] free to find to the contrary on the evidence here.

*Id.* (quoting *Davis,* 562 F.2d at 687 n. 6).

{15} We conclude that sufficient evidence at trial rationally supported the necessary inferences to find Defendant guilty of criminal possession of both methamphetamine and drug paraphernalia.

## Evidentiary Review Under Rule 11–404(B) Was Not Preserved

{16} Defendant contends that the court should not have admitted evidence of drug use, possession, and distribution by other residents of the mobile home because it constituted improper use of prior bad acts or propensity evidence under Rule 11–404(B). For the reasons that follow, we are not persuaded that Defendant properly preserved any such objection.

{17} We note that Defendant's motion in limine never mentioned Rule 11–404(B), nor did Defendant argue either at the pretrial hearing or during trial that the evidence was inappropriate character or propensity evidence under Rule 11–404(B). Instead, the motion in limine argued that evidence of drug use by others would be "more prejudicial than probative, and irrelevant to the charge" against Defendant. Defendant agreed with the trial court that her argument was based on Rule 11–403, and the court used a Rule 11–403 analysis to deny that portion of Defendant's motion in limine regarding the presence of other drugs in the mobile home. Defendant never expanded upon her objection to include Rule 11–404's prohibition of character or prior bad acts evidence.

{18} This Court reviews evidentiary issues only when a timely objection at trial alerts the mind of the trial judge to the error, allowing the judge to rule intelligently on the matter and correct potential mistakes. *See Garcia v. La Farge,* 119 N.M. 532, 540, 893 P.2d 428, 436 (1995). An objection requires specificity so that the "appellate court does not have to guess at what was and what was not an issue at trial." *State v. Lucero,* 116 N.M. 450, 453, 863 P.2d 1071, 1074 (1993).

{19} Defendant attempts to overcome her failure to preserve by recasting the nature of Rule 11–404(B) so that it fits as a kind of subset within the parameters of Rule 11–401 NMRA 2000 and Rule 11–403, the relevancy objections that were actually made at trial. For purposes of this discussion we will assume, without deciding, that Rule 11–404(B) could apply to bad acts evidence (drug possession) pertaining to third parties, the other occupants of the mobile home, instead of being limited to bad acts of Defendant. We note, however, that in other jurisdictions misconduct on the part of third parties ordinarily does not implicate Rule 11–404(B) protections. *See State v. Thompson,* 244 Neb. 375, 507 N.W.2d 253, 268 (1993) (finding that "[a]lthough the statute does not expressly state that the 'other crimes, wrongs, or acts' must be those of the accused and not of a third party, it is obviously implied, and we have previously held that to be the case"); *see also State v. Martin,* 723 So.2d 1021, 1025 (La.Ct.App.1998) (finding, that with regard to the equivalent to our Rule 11–404(B), the "prohibition against evidence of other crimes has no application to other crimes committed by third parties").

{20} Defendant claims that her general relevancy objection under Rule 11–401 necessarily included an implicit objection under Rule 11–404(B). Characterizing Rule 11–401 as "a rule of exclusion of irrelevant evidence," Defendant interprets Rule 11–404(B) as a rule that "creates exceptions to the general exclusion of irrelevant evidence." According to this argument, Defendant's relevancy objection based solely on Rule 11–401 preserved for appeal the issue of character evidence under Rule 11–404(B). We disagree for at least two reasons.

{21} First, Rule 11–404(B) is a rule of inclusion, not exclusion, "providing for the admission of all evidence of other acts that is relevant to an issue in trial," other than the general propensity to commit the crime charged. 2 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 404.20[3], at 404–42 (Joseph M. McLaughlin, ed., 2d ed.1999). Second, character or propensity evidence is excluded precisely because its relevance fosters over-reliance upon it; it injects a prejudicial effect into the proceeding that substantially outweighs the benefits of whatever slight, probative value it may have. *See id.* § 404.10[1], at 404–11; *see also* Fed.R.Evid. 404 Advisory Committee Notes. Thus, Rule 11–404(B) excludes bad character or propensity evidence, not so much because it has no relevance, but because its probative value, however slight, is

too prejudicial. It creates the unnecessary risk that a jury will convict a defendant on the basis of former behavior and not the conduct charged. Our case law describes Rule 11–404(B) as a "specialized" rule of relevancy. *See State v. Lucero,* 114 N.M. 489, 492, 840 P.2d 1255, 1258 (Ct.App.1992); *see also State v.. Alberts,* 80 N.M. 472, 474, 457 P.2d 991, 993 (Ct.App.1969) (finding that if the sole purpose of evidence is to demonstrate bad character, reputation, or disposition, its prejudicial effect makes it inadmissible). Therefore, if Defendant believed she had a Rule 11–404(B) objection, she should have articulated it as such, so as to alert the trial court of the specific issue at stake.

{22} Next, Defendant contends that the State actually introduced Rule 11–404(B) into the legal argument at the motion in limine hearing when it claimed that the evidence of other drugs in the mobile home was relevant to Defendant's knowledge and possession of the methamphetamine located in her room. Because the State raised the issue of Defendant's knowledge, and because knowledge is a permissible exception to prior bad acts evidence under Rule 11–404(B), Defendant maintains that the trial court was aware of the potential application of Rule 11–404(B) in deciding the motion in limine.

{23} We are unpersuaded. Nothing in the record below or even in Defendant's docketing statement to this Court invokes Rule 11–404(B). Objections are preserved for review only if counsel states clearly the grounds for the objection. *See State v. Casteneda,* 97 N.M. 670, 674, 642 P.2d 1129, 1133 (Ct.App.1982) (holding that the admission of evidence was proper when objection at trial was solely on relevancy grounds and not on Rule 11–404(B) bad character grounds, even though it may have been inadmissible as propensity evidence if the proper objection had been made).

### Rule 11–403 as Applied to Evidence of Criminal Misconduct of Third Persons

{24} Finally, Defendant claims error under Rule 11–403, contending that the State used the evidence of drugs and paraphernalia possessed by other occupants of the mobile home to promote an unfair theory of guilt by association. Although as discussed hereafter we disapprove of how this evidence was ultimately used at trial, we conclude that the court did not commit reversible error.

{25} Rule 11–403 is a discretionary rule that allows a trial court to exclude relevant evidence when "its probative value is substantially outweighed by the danger of unfair prejudice." The trial court found the evidence of drugs in the possession of others in the mobile home was "highly relevant" and "also coincidentally to be the truth." The court concluded that such evidence was "very probative of the issue of knowledge, [and] very probative of the issue of possession," and therefore that its use was not substantially outweighed by unfair prejudice.

{26} Normally, " 'evidence of wrongdoing on the part of a third party is inadmissible as irrelevant to a given case.' " *Beckett v. State,* 730 So.2d 809, 811 (Fla.Dist.Ct.App.1999) (quoting *Denmark v. State,* 646 So.2d 754, 757 (Fla.Dist.Ct.App.1994)); *cf. State v. Ross,* 104 N.M. 23, 27, 715 P.2d 471, 475 (Ct.App.1986) (finding no danger of guilt by association when the state impeached witnesses using convictions arising from the same fraud the defendant was accused of, because the state did not try to connect those convictions to the accused). Such evidence may sometimes be admitted to demonstrate the background of a crime, but in those situations there must be a direct link between the third-party evidence and the particular charge against the accused, that demonstrates more than just guilt by association. *See e.g., Freeman v. United States,* 689 A.2d 575, 582 (D.C.1997) (finding that defendant's gang membership was part of the prosecution's theory explaining the motive for a retaliatory assault upon a witness who testified against another gang member). When no such direct link exists between third-party acts and the charges against the defendant, the risk of unfair prejudice militates against such third-party evidence. *See, e.g., Beckett,* 730 So.2d at 811–12 (holding that evidence of father spraying victim with gasoline a week before son intentionally struck victim with car was error and unnecessary to show son's intent); *Denmark,* 646 So.2d at 754–57 (hold-

ing that admission of third-party car theft before defendant participated in a drive by shooting was impermissible to demonstrate premeditation). Although we are concerned with "the specter of guilt by association," when third-party misconduct evidence is presented, *Ross,* 104 N.M. at 27, 715 P.2d at 475, we believe that in the specific circumstances of this case, the State sufficiently demonstrated a direct link between the evidence and the specific charges against Defendant.

{27} Defendant was present in the mobile home when the police search revealed an abundance of contraband. Defendant denied knowing that drugs were present in her bedroom even though she had used drugs there before. Knowledge is an essential element of constructive possession, and to prove it, the State had to point out the presence of drugs elsewhere in the mobile home—that this was, arguably, "a drug house"—to create an inference that Defendant must have known of the drugs in her own bedroom. *See Chandler,* 119 N.M. at 730, 895 P.2d at 252.

{28} We recognize that at the motion in limine hearing, Defendant offered to concede that she knew what amphetamine looked like and to testify about her general knowledge of its characteristics. However, this was not the equivalent of a stipulation that she knew of the drugs in her dresser drawer. Defendant was still denying knowledge, a crucial element of the State's case. Thus, the trial court could reasonably have concluded that evidence of other drugs in the house was of some probative value.

{29} Defendant argues that the probative value, if any, was outweighed by the unfair prejudice of convicting Defendant solely by virtue of her association with drug users. We disagree. The additional probative value of these drugs in the possession of others may have been marginal, and even cumulative, especially against the backdrop of Defendant's concessions that she knew of the paraphernalia in the dresser drawer which she had used in the past to consume methamphetamine with Ambrose. But Defendant's admissions also reduced the prejudicial impact of the evidence pertaining to drug possession by others. Defendant can hardly claim unfair prejudice from evidence that she associated with drug users, when she had already admitted to using drugs and living with Ambrose, a known drug user. Moreover, the danger of guilt by association is mitigated when there is additional evidence to support a conviction. *See Freeman,* 689 A.2d at 582 (finding no significant danger that a conviction rested on guilt by association when other evidence supporting guilt existed); *Richmond v. State,* 685 N.E.2d 54, 55 n. 1 (Ind.1997) (noting that a real threat of guilt by association may exist where the defendant's gang membership is "the entire theme of the trial").

{30} Moving on from her unsuccessful motion in limine, Defendant claims this third-party evidence was improperly used at trial to inflame the jury; that it was used to appeal to the prejudices of jury members to convict Defendant because of who she was, rather than what she actually had done. To a certain extent, we agree with Defendant. The prosecution argued in closing that (1) "Defendant lived in a drug house," (2) people in the mobile home were "peddling poison in our community," (3) the owner of the mobile home was "convicted of distribution, drug dealing" and (4) Defendant's boyfriend pleaded guilty to possession of methamphetamine "under the same circumstances." The State then asked the jury if it would be fair to allow Defendant to "walk away unscathed," and exhorted the jury to return "equal justice" by convicting her, in part, because of the criminal conduct of others in the same residence.

{31} We are uncomfortable with this kind of closing argument. The commentary on drug distribution went well beyond what was necessary to decide Defendant's charge of simple possession. The State's emphasis on "peddling poison in the community" was a thinly disguised appeal to passion. *See United States v. Green,* 548 F.2d 1261, 1271 (6th Cir.1977) (invoking the " 'dope peddler' image" · is a highly inflammatory trial tactic that, under the appropriate circumstances, warrants reversal for prosecutorial misconduct). There was no evidence that Defendant had "peddled" any drugs, and Defendant was never charged with distribution. The only *mens rea* the prosecution had to

demonstrate was knowledge of and control over the specific drugs in Defendant's dresser drawer; the specific intent to distribute had no bearing on this crime. *Cf. Chandler,* 119 N.M. at 730–31, 895 P.2d at 252–53 (allowing evidence of third-party possession and distribution when defendants charged with intent to distribute); *Brietag,* 108 N.M. at 369, 772 P.2d at 899 (same). Examined in the abstract, this kind of pandering is at best unprofessional; at worst, it places in jeopardy an otherwise just verdict. We observe that cases allowing third-party evidence include a proviso that such evidence not be abused in front of the jury. *See Freeman,* 689 A.2d at 584–85 (using a limiting instruction on the use of third-party evidence); *Richmond,* 685 N.E.2d at 56 (noting that the prosecution did not dwell on evidence of defendant's gang membership).

[21, 22] {32} However, it is too late for Defendant to cry foul from the State's closing argument. Defendant never objected at trial to the prosecutor's statements. The remarks regarding the convictions of others, while unnecessary, were directed to the judgments and sentences of the owner of the mobile home and Ambrose, and Defendant herself entered these convictions into evidence. When remarks by the prosecutor are not challenged, they create reversible error only when they rise to the level of fundamental error. To qualify as fundamental error, the remarks must have been " 'so egregious' " and must have had " 'such a persuasive and prejudicial effect on the jury's verdict that the defendant was deprived of a fair trial.' " *State v. Allen,* 2000–NMSC–002, ¶ 95, 128 N.M. 482, 994 P.2d 728 (1999) (quoting *State v. Duffy,* 1998–NMSC–014, ¶¶ 46–47, 126 N.M. 132, 967 P.2d 807). We note that Defendant never requested a limiting instruction on the use of the third-party evidence. In this context, especially given the other evidence available to convict Defendant, we cannot conclude that Defendant was deprived of a fair trial.

## CONCLUSION

{33} We reject each of Defendant's challenges to the jury verdict raised in this appeal. The judgment on the verdict is affirmed.

{34} **IT IS SO ORDERED.**

WECHSLER and SUTIN, JJ., concur.