This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO**,

    Plaintiff-Appellee,

v.                              **No.   31,609**

**ANTHONY NAPPI,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**Stephen Pfeffer, District Judge**

Gary K. King, Attorney General
Santa Fe, NM
Jacqueline R. Medina, Assistant Attorney General
Albuquerque, NM

for Appellee

Jorge A. Alvarado, Chief Public Defender
Santa Fe, NM
Sergio J. Viscoli, Assistant Appellate Defender
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**BUSTAMANTE, Judge.**

{1}     Defendant Anthony Nappi was charged with two counts of battery upon a peace officer, one count of battery, and one count of assault. These charges resulted in two separate jury trials. Following the first trial, the jury found Defendant guilty of assault, not guilty of battery, and could not reach a unanimous decision with respect to the two counts of battery upon a peace officer. The State retried Defendant for the two counts of battery upon a peace officer before a second jury, which found him guilty of both charges.

{2}     On appeal, Defendant asks this Court to reverse his convictions for battery upon a peace officer for three reasons: (1) the district court abused its discretion when it allowed Corina Estrada Sandoval (Sandoval), the victim of assault, to testify at the second trial; (2) the jury instructions were fundamentally erroneous because (a) the battery upon a peace officer jury instructions did not include a statement requiring the jury to find that Defendant did not act in self-defense and (b) the jury was given an intoxication instruction even though it was not warranted because battery upon a peace officer is not a specific intent crime; and (3) there was insufficient evidence to support Defendant's conviction for battery upon a peace officer as to Sergeant John Schaerfl and his conviction for battery upon a peace officer as to Officer Bryan

Hidalgo. Based on the facts and arguments presented, we find no error. Accordingly, we affirm**.**

**I.       EVIDENTIARY ISSUES**

**A.       Sandoval's Testimony**

{3}       During the first trial, Sandoval testified that on April 9, 2009, she and Gabriel Garcia were working the night shift at a Giant convenience store and gas station in Santa Fe, New Mexico. Around 11:00 p.m., Sandoval was in the store by herself while Garcia was outside near the gas pumps. Defendant entered the store and purchased cigarettes from Sandoval. Sandoval testified that Defendant was "acting weird," was "full of blood on his hand," and had a scratch on his face above his eyebrow. She asked Defendant if he was okay and he said that he had gotten into a fight with his girlfriend and busted out a window in his truck.

{4}       After Defendant made his purchase, Sandoval assisted another customer and the two spoke to each other in Spanish, which prompted Defendant to call Sandoval a "f—ing Mexican." Defendant told Sandoval to go back to where she came from, he hit the counter, and continued to ramble. The other customer went outside and asked Garcia to come inside. Defendant continued to verbally attack Sandoval and said that he was going to have his daughter "kick [her] ass and then they were going to kill [her]." As Sandoval was going to her vehicle to obtain her cellular phone to call the

3

police, Defendant followed her and tried to grab her from the back of her shirt. Garcia intervened and told Defendant to leave Sandoval alone. Defendant and Garcia started fighting and Sandoval called the police. The police arrived and one officer went inside to talk to Sandoval and Garcia, while another officer stayed outside to talk to Defendant. Shortly thereafter, a third officer and several paramedics arrived.

{5}     At the conclusion of the evidence in the first trial, the jury found Defendant guilty of assaulting Sandoval.[1] Prior to the second trial, defense counsel moved to exclude testimony from Sandoval. Defense counsel argued that "any mention of the assault or battery on the clerks is going to be prejudicial to [Defendant]" and they are not "necessary for the State to bring [its] case." The State argued that Sandoval's testimony was relevant to show why the officers were on scene. The State also pointed out that Defendant's defense in the first trial was that he had been jumped by two people, he had done nothing wrong, and was an innocent bystander who had been treated unfairly. The State indicated that it only intended to call Sandoval if Defendant testified, thereby implying that Sandoval would be a rebuttal witness. Before the second trial commenced, the district court ruled that the prior events were

---

[1]The State was not able to locate Garcia to testify at the first trial, and Defendant was acquitted of battery against Garcia.

"relevant to the context of this matter" and were not unfairly prejudicial to Defendant to warrant exclusion.

{6}    In his opening statement in the second trial, defense counsel told the jury that Defendant had been the victim of a beating, which the police officers did not investigate; instead, the police officers "finish[ed] the job" and beat Defendant after he had already been assaulted, cut in the face, and beaten. During the State's case-in-chief, defense counsel cross-examined Sergeant Schaerfl and asked him about the current status of the investigation regarding who beat Defendant. The State objected to this line of questioning. The State indicated that it had only intended to ask Sandoval about the events that occurred on April 9, 2009, but if Defendant was going to be allowed to ask Sergeant Schaerfl about the status of the investigation regarding who beat Defendant, then Sandoval should be allowed to testify that Defendant was convicted of assaulting her in a previous trial.

{7}    At this point in the trial, it seemed likely that Sandoval would be testifying during the State's case-in-chief, instead of as a rebuttal witness. After talking to his client, defense counsel decided to refrain from asking about the status of the investigation regarding the alleged attack on Defendant. Defense counsel confirmed that if he did not proceed with this line of questioning, then the State would not ask Sandoval about the assault conviction. The State agreed.

5

**{8}** During the State's case-in-chief, the State advised the district court that it intended to call Sandoval to testify. Defense counsel objected, stating that he thought Sandoval was a rebuttal witness and reiterating that Sandoval's testimony was not relevant and would be prejudicial. The State argued that Sandoval's testimony was relevant because Sandoval would testify about the events leading up to the police officers' arrival, including the fact that Sandoval did not see anyone jump Defendant, and the police officers did investigate Defendant's claim that he had been beaten, despite defense counsel's opening statement to the contrary.

**{9}** The district court, once again, ruled that Sandoval's testimony was relevant. Therefore, Sandoval was permitted to testify during the State's case-in-chief, but the district court instructed her that she could not mention the first trial or Defendant's conviction for assault. Sandoval complied with the district court's instruction, and her testimony in the second trial was consistent with her testimony in the first trial.

**{10}** On appeal, Defendant contends that the district court abused its discretion when it allowed Sandoval to testify in the second trial, because the first jury had already convicted Defendant of assault against Sandoval and Sandoval did not witness the events that occurred outside between Defendant and the officers. Defendant contends that Sandoval's testimony was admitted in violation of Rules 11-401 to -404 NMRA.

6

**B. Standard of Review**

{11} "Admission of evidence is within the sound discretion of the trial court and the trial court's determination will not be disturbed in the absence of an abuse of that discretion." *State v. Aguayo*, 1992-NMCA-044, ¶ 17, 114 N.M. 124, 835 P.2d 840. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted).

**C. Preservation**

{12} "This Court reviews evidentiary issues only when a timely objection at trial alerts the mind of the trial judge to the error, allowing the judge to rule intelligently on the matter and correct potential mistakes." *State v. Phillips*, 2000-NMCA-028, ¶ 18, 128 N.M. 777, 999 P.2d 421. "In objecting to evidence, it is the duty of counsel to advise the court specifically of the ground of objection, so that it may rule intelligently." *State v. Casteneda*, 1982-NMCA-046, ¶ 10, 97 N.M. 670, 642 P.2d 1129.

**D.      Rules 11-401 and -402**

{13}      Defendant preserved his argument that the district court abused its discretion by admitting Sandoval's testimony contrary to Rules 11-401 and -402, because Defendant argued that Sandoval's testimony was not relevant.  *See* Rule 11-401 (stating that evidence is relevant if it tends "to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action"); Rule 11-402 (stating that relevant evidence is admissible unless otherwise provided by law).

{14}      After hearing argument from counsel, the district court ruled, more than once, that Sandoval's testimony regarding the events that led to the police officers' arrival was relevant.  We agree that Sandoval's testimony was relevant to provide the background as to why the police officers responded to the convenience store, why the police officers approached Defendant, to help establish that Defendant was in an agitated and hostile state of mind during the incident, and to address the defense's theory that Defendant was an innocent bystander who was jumped by two people and then beaten by the police who failed to investigate the first alleged beating.  *See State v. Balderama*, 2004-NMSC-008, ¶ 23, 135 N.M. 329, 88 P.3d 845 ("Any doubt whether the evidence is relevant should be resolved in favor of admissibility.").

8

Therefore, we conclude that Sandoval's testimony was relevant and admissible under Rules 11-401 and -402.

**E.      Rule 11-403**

{15}      Defendant acknowledges that he never mentioned Rule 11-403 before the district court, but he contends that he preserved this issue before the district court by using the words "relevant" and "prejudicial." *See* Rule 11-403 (stating that a trial court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice"). Although Defendant should have referred to Rule 11-403, Defendant's broad argument could be construed as a Rule 11-403 objection.

{16}      Defendant argued that Sandoval's testimony was not relevant and would be prejudicial, which implies that Sandoval's testimony was more prejudical than relevant. The district court determined that Sandoval's testimony was relevant and, to the extent it was prejudicial to Defendant, it was not unfairly prejudicial. Therefore, the district court and the State were on notice that Defendant was invoking Rule 11-403, even though he did not mention the specific rule. *See State v. Garcia*, 2013-NMCA-064, ¶ 8, 302 P.3d 111 (holding that the district court and the prosecution were on notice that the defendant was invoking Rule 11-106 NMRA, even though he did not direct the district court to the specific rule, when he asserted that the

9

complete transcript should be admitted into evidence because statements were being taken out of context). Because the district court and the State were on notice that Defendant was arguing that Sandoval's testimony was more prejudicial than relevant, this issue was preserved for our review.

{17} The district court determined that Defendant's testimony was relevant and not unfairly prejudicial. We see no reason to disagree. We recognize that Sandoval's testimony was prejudicial to Defendant because it contradicted Defendant's theory of the case. However, "[t]he fact that competent evidence may tend to prejudice [the] defendant is not grounds for exclusion of that evidence." *State v. Hogervorst*, 1977-NMCA-057, ¶ 46, 90 N.M. 580, 566 P.2d 828. "The question is whether the probative value of the evidence was outweighed by its prejudicial effect." *Id.*

{18} To ensure that Defendant did not suffer unfair prejudice, the district court limited Sandoval's testimony and instructed her that she could not testify about the first trial or about Defendant's conviction for assault. Therefore, the second jury was not informed that Defendant had been charged and convicted of assault against Sandoval, or about the previous charge of battery against Garcia.

{19} We conclude that the district court took appropriate measures to limit Sandoval's testimony, and the district court did not abuse its discretion by allowing Sandoval to testify about the events leading up to the police officers' arrival. *See*

*Rojo*, 1999-NMSC-001, ¶ 48 ("Determining whether the prejudicial impact of evidence outweighs its probative value is left to the discretion of the trial court." (alteration, internal quotation marks, and citation omitted)).

{20}   As an aside, Defendant suggests that the prejudicial impact of Sandoval's testimony was compounded by the fact that UJI 14-5028 NMRA was not given to the jury. UJI 14-5028 is given upon request to advise the jury that evidence of other wrongs or offenses was admitted into evidence and should only be considered for a limited purpose. *See id.*; UJI 14-5028 Use Note 1. Defendant did not request this instruction; therefore, he cannot claim error on appeal. *Cf. Aguayo*, 1992-NMCA-044, ¶ 30 (stating that the potential for prejudice was "compounded by the failure of defense counsel to request a limiting instruction"); *State v. Kraul*, 1977-NMCA-032, ¶ 19, 90 N.M. 314, 563 P.2d 108 ("In the case of a failure to instruct, a correct written instruction must be tendered.").

**F.     Rule 11-404(B)**

{21}   We are not persuaded that Defendant properly preserved an objection pursuant to Rule 11-404(B). *See* Rule 11-404(B)(1) (prohibiting evidence of a person's crimes, wrongs, or other acts "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character"). Defendant

11

neither mentioned Rule 11-404(B) nor argued that Sandoval's testimony was inappropriate character or propensity evidence.

{22} Nevertheless, Defendant argues that counsel invoked this rule when he argued that Sandoval's "testimony would be highly prejudicial because [her] proposed testimony concerned prior events which had already been litigated." Defendant insists that the district court judge understood that counsel was invoking a ruling pursuant to Rule 11-404(B) because the district court judge mentioned "context" when he admitted Sandoval's testimony, and context is "an arguably valid reason" to admit Sandoval's testimony under Rule 11-404(B). *See* Rule 11-404(B)(2) (providing that evidence of a person's prior bad acts "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident").

{23} Our Court addressed a similar issue in *Phillips*, 2000-NMCA-028. In that case, the defendant argued that the district court should not have admitted evidence of drug use, possession, and distribution by other residents because such evidence constituted improper use of prior bad acts or propensity evidence under Rule 11-404(B). *Phillips*, 2000-NMCA-028, ¶ 16. The Court assumed, without deciding, that Rule 11-404(B) could apply to prior bad acts of third parties, *Phillips*, 2000-NMCA-028, ¶ 19, and determined that the defendant did not preserve this issue for appellate review. *Id.* ¶

12

23. The Court noted that the defendant's motion in limine to exclude prior bad acts of third parties was based on a Rule 11-403 analysis, never mentioned Rule 11-404(B), and the record below did not demonstrate that the defendant invoked Rule 11-404(B). *Phillips*, 2000-NMCA-028, ¶¶ 17, 23. Our Court was not persuaded by the defendant's argument that her general relevancy objection under Rule 11-401 necessarily included an implicit objection under Rule 11-404(B). *Phillips*, 2000-NMCA-028, ¶ 20. Accordingly, the Court held that "if [the d]efendant believed she had a Rule 11-404(B) objection, she should have articulated it as such, so as to alert the trial court of the specific issue at stake." *Phillips*, 2000-NMCA-028, ¶ 21.

{24} The same reasoning applies in this case with respect to Rule 11-404(B). Although Defendant's general objection that the evidence was not relevant and would be prejudical was sufficient to invoke Rule 11-403, it was not sufficient to invoke Rule 11-404(B). *See Casteneda*, 1982-NMCA-046, ¶¶ 9-10, 55 (holding that the admission of evidence was proper when objection at trial was solely on relevancy grounds and not on Rule 11-404(B) bad character grounds, even though it may have been inadmissible as propensity evidence if the proper objection had been made).

**II.    JURY INSTRUCTIONS**

{25} Defendant argues that the jury instructions were fundamentally erroneous for two reasons. First, Defendant asserts that the jury instructions for battery on a peace

13

officer failed to include, as an essential element, that Defendant did not act in self-defense. Second, Defendant argues that the district court erred by instructing the jury that Defendant's intoxication may have affected his ability to form the specific intent to commit battery upon a peace officer. Defendant asserts that battery upon a peace officer is a general intent crime, so a specific intent jury instruction was not warranted and may have confused the jury. In light of these alleged errors, Defendant asks this Court to reverse his convictions for battery upon a peace officer.

## A.    Standard of Review

{26}    "The standard of review we apply to jury instructions depends on whether the issue has been preserved. If the error has been preserved we review the instructions for reversible error. If not, we review for fundamental error." *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134 (citation omitted).

## B.    Self-Defense

{27}    In this case, Defendant was charged with two counts of battery upon a peace officer—one count for kicking Sergeant Schaerfl and one count for wrapping his leg around Officer Hidalgo while the officers were attempting to put Defendant in the back of a police car. The jury was given separate jury instructions for each count. Instruction No. 8 and Instruction No. 13 provided the essential elements of battery upon a peace officer, consistent with UJI 14-2211 NMRA and *State v. Padilla*, 1997-

14

NMSC-022, 123 N.M. 216, 937 P.2d 492. *See* UJI 14-2211 (providing the essential elements of battery upon a peace officer); *Padilla*, 1997-NMSC-022, ¶ 11 (holding that, in battery upon a peace officer cases, the jury must be instructed that the defendant's conduct injured the officer, threatened the officer's safety, or meaningfully challenged the officer's authority).

{28} In addition to the essential elements instructions, the jury was instructed that evidence had been presented that Defendant acted in self-defense against excessive force by Sergeant Schaerfl (Instruction No. 10) and Officer Hidalgo (Instruction No. 15). *See* UJI 14-5185 NMRA. Each of these instructions stated: "The burden is on the [S]tate to prove beyond a reasonable doubt that [D]efendant did not act in self-defense. If you have a reasonable doubt as to whether [D]efendant acted in self-defense, you must find [D]efendant not guilty."

{29} On appeal, Defendant contends that the district court erred by failing to comply with UJI 14-5181 NMRA Use Note 1, which requires the essential elements instruction to include the following language: "The defendant did not act in self[-]defense." We believe Defendant intended to cite to UJI 14-5185, because the self-defense instructions that were given in this case were patterned after UJI 14-5185, which pertains to self-defense against excessive force by a peace officer. UJI 14-5185 Use Note 1 also requires the essential elements instructions to include a statement that

the defendant did not act in self-defense. Neither of the essential elements instructions included this language.

{30} Defendant raises this issue for the first time on appeal as a matter of fundamental error. *See State v. Barber*, 2004-NMSC-019, ¶ 8, 135 N.M. 621, 92 P.3d 633. "The doctrine of fundamental error applies only under exceptional circumstances and only to prevent a miscarriage of justice." *Id.*; *see also State v. Cunningham*, 2000-NMSC-009, ¶ 18, 128 N.M. 711, 998 P.2d 176 (stating that "the analysis under a fundamental error standard is distinct from the analysis under a reversible error standard" because "fundamental error [is] an exception to the general rule requiring preservation of error").

{31} The present case is analogous to *State v. Armijo*, 1999-NMCA-087, 127 N.M. 594, 985 P.2d 764. In *Armijo*, the defendant was charged with aggravated assault and aggravated battery and he claimed that he acted in self-defense. *Id.* ¶ 11. The jury was given a self-defense instruction in accordance with UJI 14-5181. *Armijo*, 1999-NMCA-087, ¶ 11. However, the essential elements instructions failed to include a statement that the defendant did not act in self-defense as required by UJI 14-5181 Use Note 1. *See Armijo*, 1999-NMCA-087, ¶ 11.

{32} In *Armijo*, we had to decide "whether it is fundamental error for judges not to follow the use note for the self-defense instruction when no one alerts them to the

16

need to insert the sentence about the defendant not acting in self[-]defense in the elements instruction and when an otherwise correct self-defense instruction is given." *Id.* ¶ 24. We concluded that it is not fundamental error as long as the jury is instructed that it is the prosecution's burden to prove unlawfulness or to disprove self-defense beyond a reasonable doubt, regardless of whether that instruction is contained in the essential elements instruction or the self-defense instruction, and "provided that no other instruction causes the [self-]defense instruction to be confusing or meaningless." *Id.* ¶ 26.

{33}    Applying the standard set forth in *Armijo* to the present case, we conclude that, even though the jury instructions did not comply with UJI 14-5185 Use Note 1, this error does not rise to the level of fundamental error. The jury was instructed that the State was required to prove that Defendant did not act in self-defense and if there was any reasonable doubt as to whether Defendant acted in self-defense, the jury was required to find him not guilty. Reviewing the jury instructions as a whole, we are satisfied that the jury was instructed that it was the State's burden to disprove self-defense beyond a reasonable doubt and the district court did not give any other instruction that would cause the self-defense instruction to be confusing or meaningless. *See Cunningham*, 2000-NMSC-009, ¶ 21 ("[W]e hold that in a fundamental error analysis[,] jury instructions should be considered as a whole and

17

a failure to include an essential element in the elements section may be corrected by subsequent proper instructions that adequately addresses the omitted element."); *see also Armijo*, 1999-NMCA-087, ¶¶ 26-27.

**C.     Intoxication**

{34}     Defendant argues that the district court erred by instructing the jury that evidence had been presented that Defendant was intoxicated from the use of alcohol or drugs, which may have affected his ability to form specific intent to commit battery upon the police officers in this case. *See* UJI 14-5111 NMRA. Defendant and the State agree that the crime of battery upon a peace officer is a general intent crime. *See State v. Skippings*, 2011-NMSC-021, ¶ 14, 150 N.M. 216, 258 P.3d 1008 (recognizing that aggravated battery requires a specific intent to injure, while simple battery only requires a general intent to touch or apply force). "Voluntary intoxication from use of alcohol or drugs is not a defense to the question of whether a defendant had a general criminal intent." *State v. Kendall*, 1977-NMCA-002, ¶ 17, 90 N.M. 236, 561 P.2d 935, *rev'd in part on other grounds*, 1977-NMSC-015, 90 N.M. 191, 561 P.2d 464.

{35}     The record does not reflect, and Defendant does not argue, that he objected to the intoxication jury instructions. *See State v. Compton*, 1953-NMSC-036, ¶ 20, 57 N.M. 227, 257 P.2d 915 ("The primary purpose of any objection to an instruction is,

of course, to alert the mind of the judge to the claimed error contained in it, to the end that he may correct it."). Instead, Defendant asserts that "[t]he combined errors of not following the use note and giving a specific intent instruction where not warranted can only lead to the type of juror confusion which implicates a fundamental unfairness in the judicial process." We disagree.

{36} Even if battery on a peace officer is a general intent crime, it was not fundamental error to give the jury the intoxication instructions in this case. Pursuant to Instruction No. 8, the jury was instructed that to find Defendant guilty of battery upon a peace officer with respect to Sergeant Schaerfl, the State was required to prove beyond a reasonable doubt that Defendant "intentionally touched or applied force to Sergeant . . . Schaerfl by kicking him in the back[.]" Instruction No. 9, one of the two intoxication instructions, provided:

> Evidence has been presented that [D]efendant was intoxicated from the use of alcohol or drugs. You must determine whether or not [D]efendant was intoxicated from the use of alcohol or drugs and, if so, what effect this had on [D]efendant's ability to form the intent to commit [b]attery on a [p]eace [o]ffice[r] by touch[ing] or applying force to Sergeant . . . Schaer[f]l by kicking him in the back.

This instruction further stated that it was the State's burden to prove that Defendant "was capable of forming an intention" to batter Sergeant Schaerfl.

{37} Similarly, pursuant to Instruction No. 13, the jury was instructed that to find Defendant guilty of battery upon a peace officer with respect to Officer Hidalgo, the

19

State was required to prove beyond a reasonable doubt that Defendant "intentionally touched or applied force to Officer . . . Hidalgo by [D]efendant wrapping his leg around Officer . . . Hidalgo[.]" Instruction No. 14, the second intoxication instruction, was similar to Instruction No. 9 and allowed the jury to consider whether Defendant's intoxication affected his ability to form the intent to batter Officer Hidalgo.

{38}    In addition to the intoxication instructions, the jury was given a general criminal intent instruction (Instruction No. 18).  Instruction No. 18 was patterned after UJI 14-141 NMRA and stated:

> In addition to the other elements of [b]attery [u]pon a [p]eace [o]fficer as charged in Count[s] I and II or [r]esisting [a]rrest a less[e]r included offense in Counts I and II; the State must prove to your satisfaction beyond a reasonable doubt that [D]efendant acted intentionally when he committed the crimes.  A person acts intentionally when he purposely does an act which the law declares to be a crime, even though he may not know that his act is unlawful.  Whether [D]efendant acted intentionally may be inferred from all of the surrounding circumstances, such as the manner in which he acts, the means used, and his conduct and any statements made by him.

This instruction properly instructed the jury regarding general intent.

{39}    Defendant claims that, because battery upon a peace officer is a general intent crime, and voluntary intoxication is not a defense to a general intent crime, the intoxication instruction may have confused the jury as to the appropriate mens rea required to convict Defendant.  We conclude that even if a reasonable juror would have been confused by the jury instructions by considering Defendant's intoxication

20

as a possible defense, this error placed a higher burden on the State—to Defendant's benefit—and, thus, did not constitute fundamental error in this case. We further conclude that the combined errors—failure to comply with UJI 14-5185 Use Note 1 and the intoxication instructions—do not constitute fundamental error. *See Barber*, 2004-NMSC-019, ¶ 17 (providing that fundamental error occurs in "cases with defendants who are indisputably innocent, and cases in which a mistake in the process makes a conviction fundamentally unfair notwithstanding the apparent guilt of the accused"); *Cunningham*, 2000-NMSC-009, ¶ 21 (discussing the difference between fundamental error and reversible error).

## III.    SUFFICIENCY OF THE EVIDENCE

{40}    "In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *Cunningham*, 2000-NMSC-009, ¶ 26. "The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (alteration, emphasis, internal quotation marks, and citation omitted).

{41}    The State was required to prove beyond a reasonable doubt that Defendant "intentionally touched or applied force" to the officers; that his conduct caused an

21

actual threat to the safety of the officers, meaningful challenge to their authority, or an actual injury to the officers; that Defendant "acted in a rude, insolent or angry manner"; that the victims were peace officers and they were performing the duties of peace officers; that Defendant knew the victims were peace officers; and this happened in New Mexico on or about April 9, 2009. *See* UJI 14-2211; NMSA 1978, § 30-22-24 (1971).

{42} Defendant asserts that there was insufficient evidence to support his two convictions for battery upon a peace officer because he did not intend to batter the officers, there was no threat to the safety of the officers, there was no meaningful challenge to the officers' authority, and the officers were not injured. Defendant does not dispute that he kicked Sergeant Schaerfl and he claims that the "alleged wrapping of his legs around Officer Hidalgo was only a defensive reaction." Defendant maintains that he acted in self-defense because the police officers were using excessive force.

{43} Sergeant Schaerfl, Officer Hidalgo, and numerous paramedics testified about Defendant's interactions with Sergeant Schaerfl and Officer Hidalgo on April 9, 2009. Additionally, Sergeant Schaerfl's police video was shown to the jury numerous times. Defendant testified on his own behalf.

22

**{44}** Sergeant Schaerfl testified that he responded to a call involving an altercation at a convenience store in Santa Fe and he approached Defendant in the parking lot to find out what had happened. Defendant was upset and claimed that he had been jumped by people in the convenience store.

**{45}** While Sergeant Schaerfl was outside with Defendant, a second officer was questioning Sandoval and Garcia inside the convenience store. Sergeant Schaerfl attempted to calm Defendant down and instructed him to sit on the curb while Sergeant Schaerfl called for an ambulance. Instead of calming down, Defendant became more agitated, indicated that the police were not taking any action against the people who did this to him, refused to comply with Sergeant Schaerfl's instructions to sit down on the curb, and attempted to reenter the store.

**{46}** Sergeant Schaerfl verbally instructed Defendant to sit down, but Defendant continued to move toward the front door. At some point, Defendant got close to Sergeant Schaerfl's face and continued to tell him that he was not doing his job. Sergeant Schaerfl stepped back, put his hand up, and tried to create distance between himself and Defendant.

**{47}** Defendant continued to disobey Sergeant Schaerfl's repeated commands to sit down, and eventually, Sergeant Schaerfl grabbed Defendant by one of his wrists, took him to the curb, made him sit down, and handcuffed Defendant's wrists behind his

23

back. This caused Defendant to become more irate and he attempted to stand up. Sergeant Schaerfl attempted to push Defendant back into a seated position, Defendant resisted, and tried to pull away.

{48} From Defendant's seated position, Sergeant Schaerfl rolled Defendant onto his left side to prevent him from using his legs to stand up. Defendant continued to move around, tried to turn over, and was thrashing his body around. Sergeant Schaerfl rolled Defendant into the prone position so that Defendant's chest and stomach were on the ground. Around this time, Officer Hidalgo arrived and assisted Sergeant Schaerfl. Defendant continued to be combative, while the officers attempted to restrain him.

{49} While Defendant was in the prone position and Sergeant Schaerfl was on the ground near Defendant's belt line, Defendant kicked Sergeant Schaerfl in the back two or three times.

{50} Sergeant Schaerfl also testified that Defendant's kicks were deliberate and that "his legs did come up and touch me at one point, and then they went down, and then they came up twice, 'boom, boom,' with two independent kicks." When Defendant's heels struck Sergeant Schaerfl in the back, Sergeant Schaerfl's body started to fall forward. Sergeant Schaerfl had to use his strength to keep from falling forward completely because if he had fallen straight down, the weapons on his duty belt would

24

have been within Defendant's reach. According to Sergeant Schaerfl, the kicks to his back caused pain, even though they did not cause a prolonged injury.

{51} Although several paramedics had arrived on scene, Sergeant Schaerfl decided the police should take Defendant to the hospital for medical treatment because Defendant was too combative. Defendant was still lying in the prone position, so Sergeant Schaerfl told Defendant that he and Officer Hidalgo were going to roll him onto his back side and help him stand up, so the police could take him to the hospital. The two officers lifted Defendant up from underneath his arms, but Defendant refused to put his feet on the ground. The officers had to carry Defendant to the nearest police car. Meanwhile, Defendant was screaming and yelling.

{52} After the back door was opened, the officers instructed Defendant to sit down in the police car. Defendant continued to resist, and after much effort, Defendant was sitting on the back seat, but his legs were still outside of the car. While Defendant was facing Officer Hidalgo, Defendant wrapped both of his legs around one of Officer Hidalgo's leg. With his legs fastened around Officer Hidalgo's leg, Defendant tried to pull Officer Hidalgo into the police car.

{53} Officer Hidalgo instructed Defendant multiple times to let go of his leg. Defendant did not release his grip on Officer Hidalgo, so Sergeant Schaerfl and one

of the paramedics had to physically unwrap Defendant's legs from Officer Hidalgo's leg.

**{54}** Based on the foregoing evidence, we conclude that a rational jury could have found beyond a reasonable doubt that Defendant intentionally kicked Sergeant Schaerfl; that Defendant intentionally wrapped his legs around one of Officer Hidalgo's legs while Defendant attempted to pull Officer Hidalgo forward into the police unit with him; and in doing these acts, Defendant threatened the safety of the officers, meaningfully challenged the officers' authority, or caused the officers to suffer an actual injury. *See State v. Wasson*, 1998-NMCA-087, ¶ 12, 125 N.M. 656, 964 P.2d 820 (stating that a defendant's intent generally presents a question of fact for the jury to decide); *State v. Hoeffel*, 1991-NMCA-070, ¶ 14, 112 N.M. 358, 815 P.2d 654 ("Intent can be proved by circumstantial evidence.").

**{55}** We acknowledge that Defendant testified that he acted in self-defense because the officers used excessive force. However, we do "not weigh the evidence or substitute [our] judgment for that of the fact finder as long as there is sufficient evidence to support the verdict." *State v. Mora*, 1997-NMSC-060, ¶ 27, 124 N.M. 346, 950 P.2d 789, *abrogated on other grounds as recognized by Kersey v. Hatch*, 2010-NMSC-020, 148 N.M. 381, 237 P.3d 683; *see Rojo*, 1999-NMSC-001, ¶ 19

26

("Contrary evidence supporting acquittal does not provide a basis for reversal because the jury is free to reject [the d]efendant's version of the facts.").

{56}     The police car video, which was played for the jury multiple times, shows Defendant kicking Sergeant Schaerfl, and wrapping his legs around one of Officer Hidalgo's legs and attempting to pull Officer Hidalgo forward into the police unit with Defendant. This evidence, along with testimony from the officers, paramedics, and Sandoval, is sufficient to support Defendant's two convictions for battery upon a peace officer.

**IV.     CONCLUSION**

{57}     For these reasons, we affirm both of Defendant's convictions for battery upon a peace officer.

{58}     **IT IS SO ORDERED.**

 

**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____

**JONATHAN B. SUTIN, Judge**

_____

**CYNTHIA A. FRY, Judge**