This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                 **No. 34,181**

**CRAIG C. BENAVIDEZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Fernando R. Macias, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Elizabeth Ashton, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kimberly Chavez Cook, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**VARGAS, Judge.**

**{1}** Defendant Craig Benavidez was convicted of possession of methamphetamine, possession of drug paraphernalia, no driver's license, and no insurance. Defendant argues that the evidence was insufficient to support his convictions and that the prosecutor made improper comments during closing that contributed to the guilty verdicts. For the reasons that follow, we affirm Defendant's convictions.

**BACKGROUND**

**{2}** At trial, Deputy Joe Medina, of the Doña Ana County Sheriff's Department, testified that he stopped Defendant for driving with expired license plates. Defendant had a female passenger in the vehicle. Deputy Medina testified that on stopping Defendant, he parked directly behind Defendant's vehicle and that he could see clearly into the vehicle from his position because it had no glass on the rear window. Deputy Medina asked Defendant for his driver's license, registration, and proof of insurance, and Defendant responded that he did not have a driver's license on him. Defendant was also unable to produce proof of insurance or registration for the vehicle. Deputy Medina conducted a license inquiry based on Defendant's name and date of birth, which showed that Defendant had outstanding warrants for his arrest.

**{3}** Deputy Medina then removed Defendant from the vehicle, handcuffed him, and placed him in the rear seat of his patrol car. Deputy Medina testified that during this time, he was able to see the passenger through his peripheral vision. After about a

2

minute, Deputy Juan Flores arrived. Both officers testified that they watched the passenger for officer safety reasons while she remained in the vehicle and that she did not move. Deputy Medina then conducted an inventory search of the vehicle. At that point, the passenger had been in the vehicle for two to three minutes. The officers removed her from the vehicle, allowing her to retrieve her purse from the passenger side floorboard. During the vehicle search, Deputy Medina located a baggie of methamphetamine and a glass pipe of the type used to smoke methamphetamine. Deputy Medina testified that the pipe and the baggie were "right next to each other" underneath the driver's seat near the driver's side door. The officers then detained and handcuffed the passenger before continuing the search. No other contraband was discovered. At that point the officers released the passenger from detention, and Deputy Flores gave her a ride home. Deputy Medina testified that he did not believe that the passenger was involved in illegal activity because the drugs had been discovered under the driver's seat.

{4}     Defendant was then transported to the sheriff's station. Agent Edgar Vega of the Metro Narcotics Task Force testified that Defendant volunteered a rambling unsolicited explanation for the presence of the drugs, stating that he had enemies who might have planted the contraband. Defendant also said that he did yard work and often put trash in the bed of the truck, suggesting he may have inadvertently placed

3

the methamphetamine and pipe in the vehicle. Defendant told Agent Vega that he had a driver's license, but that it was not on him that day because it had gone through the washing machine, and that the truck was not insured or registered. Agent Vega testified that the interview was not recorded because he believed the recorder to be on and recording the interview but only realized after the interview was over that it had not been on.

{5}     Defendant was charged with possession of methamphetamine, contrary to NMSA 1978, Section 30-31-23(E) (2011); possession of paraphernalia contrary to NMSA 1978, Section 30-31-25.1(A) (2001); having no driver's license, contrary to NMSA 1978, Section 66-5-2(A)(1) (2013); having no proof of insurance, contrary to NMSA 1978, Section 66-5-205(B) (2013); and having expired registration plates, contrary to NMSA 1978, Section 66-3-18(B) (2007). Following a jury trial, Defendant was convicted on all counts and now appeals.

**DISCUSSION**

**1.     Sufficiency of the Evidence**

{6}     Defendant challenges the sufficiency of the evidence to support his convictions for having no driver's license, having no proof of insurance, possession of drug paraphernalia, and possession of methamphetamine. "The test for sufficiency of the evidence is whether substantial evidence of either a direct or circumstantial nature

4

exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Duran*, 2006-NMSC-035, ¶ 5, 140 N.M. 94, 140 P.3d 515 (internal quotation marks and citation omitted). "We do not reweigh the evidence or substitute our judgment for that of the fact finder as long as there is sufficient evidence to support the verdict." *State v. Gipson*, 2009-NMCA-053, ¶ 4, 146 N.M. 202, 207 P.3d 1179. "In reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176.

{7}     Defendant first argues that the evidence was insufficient to support his conviction for driving without a license. Defendant was charged with violating Section 66-5-2(A)(1), which provides in relevant part: "Except those expressly exempted from the Motor Vehicle Code, no person shall drive any motor vehicle . . . upon a highway in this state unless the person: (1) holds a valid license issued under the provisions of the Motor Vehicle Code[.]" The jury instruction followed the language of Section 66-5-2(A)(1) and required a finding that Defendant "did not hold a valid driver's license under the provisions of the [M]otor [V]ehicle [C]ode." *See State v. Smith*, 1986-NMCA-089, ¶ 7, 104 N.M. 729, 726 P.2d 883 ("Jury instructions

5

become the law of the case against which the sufficiency of evidence is to be measured.").

**{8}** Defendant argues that the term "hold" means to be "licensed to drive," and the State put on no evidence to prove Defendant was not licensed to drive at the time of his arrest, instead only providing officer testimony that Defendant said he did not have his license with him. Defendant argues that the State should have put on documentary evidence from the MVD to show that Defendant was not licensed to drive. The State responds that the term "hold," as used in the jury instruction, means to have in one's possession, as required by NMSA 1978, Section 66-5-16 (1985) ("Every licensee shall have his driver's license in his immediate possession at all times when operating a motor vehicle and shall display the license upon demand of a magistrate, a peace officer or a field deputy or inspector of the division.") and therefore, the evidence was sufficient to establish a violation of Section 66-5-2(A)(1).

**{9}** We believe that it is unnecessary to resolve this question, however. In this case, the evidence at trial was that when Deputy Medina requested a driver's license from Defendant, he was unable to provide one. The jury was not required to accept Defendant's explanations to police as to why that was. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829 ("[T]he jury is free to reject [the d]efendant's version of the facts."). In addition, the plain language of Section 66-5-

6

2(C) is clear that "[a] person charged with violating the provisions of this section shall not be convicted if the person produces, in court, a driver's license issued to the person that was valid at the time of the person's arrest." There is no evidence that Defendant established this defense by producing a valid driver's license in court. We therefore conclude that there was sufficient evidence to establish that Defendant was not licensed to drive in violation of Section 66-5-2(A)(1).

{10} Defendant challenges the sufficiency of the evidence to support his conviction for having no proof of insurance on the same basis. The jury instruction required a finding that "the motor vehicle was not insured[.]" Defendant contends that the evidence showed only that he did not have proof of insurance with him when he was stopped, not that the vehicle was uninsured. We disagree. Sufficient evidence that the vehicle was not insured was established by Deputy Medina's testimony that Defendant could not produce proof of insurance for the vehicle when stopped and Agent Vega's testimony that Defendant admitted that the vehicle was uninsured. Additionally, Section 66-5-205(F) provides that "[a] person charged with violating the provisions of this section shall not be convicted if the person produces, in court, evidence of financial responsibility valid at the time of issuance of the citation." There is no evidence that Defendant established this defense by producing proof of insurance in court. The evidence was sufficient to establish that the vehicle was not insured.

{11} Defendant next argues that the evidence was insufficient to support his convictions for possession of methamphetamine and possession of drug paraphernalia. Defendant was not in actual possession of the methamphetamine and glass pipe when they were discovered, and the State therefore relied on a theory of constructive possession to convict. *See State v. Lopez*, 2009-NMCA-044, ¶ 19, 146 N.M. 98, 206 P.3d 1003 (stating that possession of illegal drugs can be either actual or constructive); *see also State v. Howl*, 2016-NMCA-084, ¶ 31, 381 P.3d 684 ("Constructive possession is sufficient to support a conviction."), *cert. denied*, 2016-NMCERT-___, ___ P.3d ___ (Sept. 12, 2016). "Constructive possession exists when the accused has knowledge of drugs or paraphernalia and exercises control over them." *State v. Phillips*, 2000-NMCA-028, ¶ 8, 128 N.M. 777, 999 P.2d 421.

{12} In this case, Defendant did not have exclusive control over the area in which the contraband was found because there was a passenger who was allowed to remain in the vehicle after Defendant was removed. *See Howl*, 2016-NMCA-084, ¶ 31 (determining that the defendant did not have exclusive control over the area searched where police removed the defendant but allowed a passenger to remain in the vehicle). "When the accused does not have exclusive control over the premises where the drugs are found, the mere presence of the contraband is not enough to support an inference of constructive possession." *Phillips*, 2000-NMCA-028, ¶ 8, Additional

8

circumstances or incriminating statements or conduct on the part of the accused are then necessary to show constructive possession. *See id.*

{13} The State argues, and we agree, that such additional circumstances were present in this case. To begin, Defendant owned the vehicle in which the contraband was contained, and he was the driver. *See Lopez*, 2009-NMCA-044, ¶ 27 (holding that ownership of a vehicle can provide a link between the owner and contraband discovered within); *see also Howl*, 2016-NMCA-084, ¶ 31 (discussing that the fact of the defendant's ownership of the vehicle in which contraband was discovered could show knowledge and control); *see also State v. Morales*, 2002-NMCA-052, ¶ 32, 132 N.M. 146, 45 P.3d 406 (stating that the fact that the defendant was driving and was in control of the car gave rise to an inference of knowledge), *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 n.6, 275 P.3d 110. Additionally, the contraband was discovered under the driver's seat within arm's reach of where Defendant was sitting, and there was evidence that Defendant and the passenger did not have equal access to that area. *Cf. State v. Garcia*, 2005-NMSC-017, ¶ 21, 138 N.M. 1, 116 P.3d 72 (stating that where both the driver and passenger had equal access to the contraband, more than physical proximity was needed to establish control). The State also points to Defendant's conduct at the police station after his arrest to show knowledge. Agent Vega testified that Defendant gave an unsolicited

rambling explanation for presence of the contraband, including it being planted by unspecified enemies and the fact that he did yard work and often put trash in the bed of the truck. We believe that the jury could determine that Defendant's unsolicited offering of these explanations supported an inference that Defendant knew the methamphetamine was present. *See State v. Flores*, 2010-NMSC-002, ¶ 23, 147 N.M. 542, 226 P.3d 641 (stating that attempting to deceive police can show consciousness of guilt).

{14}    Defendant points out that the jury was denied the opportunity to evaluate Defendant's statements because Agent Vega failed to record the interview. However, Agent Vega made written notes of the interview, and the jury was able to assess his credibility as a witness. We believe that a reasonable jury could infer Defendant's knowledge and control based on this evidence, and we therefore affirm Defendant's convictions for possession. *See Morales*, 2002-NMCA-052, ¶ 29 ("When a conviction is based on constructive rather than actual possession, this Court must be able to articulate a reasonable analysis that the jury might have used to determine knowledge and control.").

{15}    Finally, Defendant argues that the evidence was insufficient to prove that the pipe was paraphernalia. We reject this argument. The evidence on this issue was that the glass pipe covered in black burn residue was found next to a baggie of

10

methamphetamine in Defendant's vehicle. Deputy Medina's unchallenged testimony was that the pipe was of the type typically used to ingest methamphetamine. This evidence is sufficient to allow the jury to infer that the pipe was used for or intended for use to ingest methamphetamine. *See* NMSA 1978, § 30-31-2(V) (2009) (defining "drug paraphernalia"); *State v. Lopez*, 2009-NMCA-127, ¶ 34, 147 N.M. 364, 223 P.3d 361 (discussing that the evidence was sufficient to allow the jury to infer that the defendant intended to use a pipe to ingest methamphetamine where it was found in the center console of the defendant's vehicle and contained methamphetamine residue). For these reasons, we reject Defendant's challenges to the sufficiency of the evidence.

**2.      Prosecutorial Misconduct**

{16}      Finally, Defendant argues that he was denied a fair trial due to inappropriate arguments made by the prosecutor in closing. Specifically, Defendant argues that the prosecutor relied on facts that were not in evidence and improperly vouched for police witnesses. As Defendant acknowledges, he did not object to the prosecutor's closing argument in district court. *See State v. Varela*, 1999-NMSC-045, ¶ 25, 128 N.M. 454, 993 P.2d 1280 (stating that to preserve an issue for appeal, a defendant must make a timely objection that specifically apprises the district court of the nature of the claimed error and invokes an intelligent ruling thereon). He therefore asks that we review this issue as a matter of fundamental error. *See Phillips*, 2000-NMCA-028, ¶ 32 (stating

that where remarks of the prosecutor are unchallenged they are reversible only where they rise to the level of fundamental error). "Prosecutorial misconduct rises to the level of fundamental error when it is so egregious and had such a persuasive and prejudicial effect on the jury's verdict that the defendant was deprived of a fair trial." *State v. Trujillo*, 2002-NMSC-005, ¶ 52, 131 N.M. 709, 42 P.3d 814 (internal quotation marks and citation omitted).

{17} Defendant argues that the prosecutor improperly vouched for the credibility of the law enforcement officers by describing them as "very honest" on seven occasions during closing argument. We disagree, however, that the prosecutor's comments in this case constituted vouching because she did not invoke the authority of her office or imply that she had special knowledge as a prosecutor. *See State v. Paiz*, 2006-NMCA-144, ¶ 55, 140 N.M. 815, 149 P.3d 579 (stating that vouching involves either "invoking the authority and prestige of the prosecutor's office or suggesting the prosecutor's special knowledge" (internal quotation marks and citation omitted)); *cf. State v. Pennington*, 1993-NMCA-037, ¶ 27, 115 N.M. 372, 851 P.2d 494 (holding that improper vouching occurred where the prosecutor referred to her ethical obligations and then asserted that a witness was not lying). Rather, the prosecutor's remarks that the officers seemed honest and truthful as witnesses was within the parameters of acceptable closing argument. *See State v. Dominguez,*

12

2014-NMCA-064, ¶ 23, 327 P.3d 1092 ("Prosecutors are permitted to comment on the veracity of witnesses so long as the statements are based on the evidence—not personal opinion—and are not intended to incite the passion of the jury.").

{18}    Defendant also argues that the prosecutor referred to facts not in evidence by stating in closing that the methamphetamine and the pipe were found under the seat "neatly placed side by side" and "very nicely." Defendant also points to the prosecutor's statement in closing that the officers kept an eye on the passenger to prevent evidence tampering, when the officers in fact testified that they watched her for officer safety reasons. Finally, Defendant argues that the prosecutor improperly stated that Defendant did not have a driver's license, when the evidence was that he did not have one with him.

{19}    We see no error in the prosecutor's statement that Deputy Medina said that Defendant did not have a license because the evidence was that Defendant did not produce a license when stopped. However, we agree with Defendant that the evidence did not support the prosecutor's statement that the pipe and the methamphetamine had been "neatly" or "nicely" placed next to each other. There was also no testimony that the officers watched the passenger in this case to prevent evidence tampering. *See State v. Ferguson*, 1990-NMCA-117, ¶ 11, 111 N.M. 191, 803 P.2d 676 (stating that "[i]t is improper for a prosecutor to refer to or argue on the basis of facts outside the

record"). There was testimony, however, that the officers are trained to watch individuals left in vehicles to prevent them from hiding things or obtaining weapons.

{20} Error occasioned by any of these statements, if any, does not rises to the level of fundamental error. There was evidence that Defendant did not produce a driver's license, and while Deputy Medina did not use the words "neatly" or "nicely," he did testify that the methamphetamine and pipe were "right next to each other" under the driver's seat. Additionally, there was testimony that police watched the passenger during the time she remained in the vehicle and that they were trained to do so to prevent such individuals from hiding things. We do not believe that any misstatements or mischaracterization by the prosecutor regarding the reasons officers watched the passenger require reversal. *See State v. Allen*, 2000-NMSC-002, ¶¶ 97-100, 128 N.M. 482, 994 P.2d 728 (discussing that a single improper comment in closing is not fundamental error in broader context of closing argument); *State v. Boergadine*, 2005-NMCA-028, ¶ 31, 137 N.M. 92, 107 P.3d 532 (holding that a few improper comments in the prosecutor's opening statement, while intentional and inappropriate, were not sufficiently egregious to rise to the level of fundamental error); *see also State v. Barber*, 2004-NMSC-019, ¶ 8, 135 N.M. 621, 92 P.3d 633 ("The doctrine of fundamental error applies only under exceptional circumstances and only to prevent a miscarriage of justice.").

{21}     For these reasons, we affirm Defendant's convictions.

{22}     **IT IS SO ORDERED.**

_____
                              **JULIE J. VARGAS, Judge**

**WE CONCUR:**

_____
**LINDA M. VANZI, Chief Judge**

_____
**STEPHEN G. FRENCH, Judge**