This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                    **No. A-1-CA-34930**

**VICTOR W. GALLEGOS,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF OTERO COUNTY**
**James Waylon Counts, District Judge**

Hector H. Balderas, Attorney General
Anita Carlson, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kimberly Chavez Cook, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**BOHNHOFF, Judge.**

{1} Defendant Victor W. Gallegos was convicted of possession of methamphetamine. Defendant raises three challenges on appeal: (1) Defendant's Confrontation Clause rights were violated because a substitute analyst testified to the conclusion reached by the primary analyst who did not testify; (2) the district court committed fundamental error by not instructing the jury on the lesser included offense of possession of paraphernalia; (3) the failure of defense counsel to request the lesser included offense instruction amounted to ineffective assistance of counsel. This is a memorandum opinion and because the parties are familiar with the facts and procedural posture of the case, we set forth only such facts and law as are necessary to decide the issues raised. We affirm.

**BACKGROUND**

{2} Alamogordo, New Mexico police executed a search warrant at the home of Defendant. The warrant was based on information supplied by a confidential informant that Defendant possessed a large quantity of heroin at his home. When the search warrant was executed, Defendant was at home with a tenant who rented a room in the house and two other visitors. The police did not find any heroin but instead found morphine, drug paraphernalia (a syringe, Q-tips, a knife with residue, a piece of a balloon with residue, and a small baggie with a hole in the corner), and remnants of methamphetamine in plastic baggies in a dresser in Defendant's bedroom.

**{3}** Defendant was charged in a three-count criminal information with possession of morphine, possession of drug paraphernalia, and possession of methamphetamine. At the two-day trial, Alamogordo police officer Joseph Singer testified about the search of Defendant's home. Officer Kyle Garrett testified to his participation in the search and his discovery of baggies that contained a clear crystal substance in them. Sergeant David Kunihiro testified that the baggies appeared to contain methamphetamine and he further testified about the drug paraphernalia found in Defendant's home. In addition to the law enforcement testimony, Andrew Barber (Barber), a forensic scientist from the state forensic laboratory in Las Cruces, testified regarding the lab tests of the baggies that were suspected to contain methamphetamine.

**{4}** Barber testified as an expert witness in the field of chemistry and as an analyst of controlled substances. Barber stated that he had reviewed the work of the analyst who performed the original analysis of the contents of the bags. The prosecutor then asked Barber what his conclusions were. Defense counsel objected, arguing lack of foundation because Barber was not present when the evidence was received by the lab and he was not involved in the testing. The district court then raised the question of a possible Confrontation Clause issue under *Crawford v. Washington*, 541 U.S. 36 (2004), because defense counsel could not question the person who actually

4

performed the testing. The prosecutor responded by arguing that *State v. Huettl*, 2013-NMCA-038, 305 P.3d 956, holds that an expert can review data and give opinions. After the district court reviewed *Huettl* it stated that there may not be a *Crawford* issue, but noted that there nevertheless was insufficient foundation on the chain of custody and, on that basis, sustained defense counsel's other objection regarding lack of foundation. Defense counsel did not follow up on the court's comments by making any argument or objection regarding *Crawford* or *Huettl*.

**{5}** The prosecutor then continued to examine Barber, questioning him about the bar codes used to mark each item received by the lab and the chain of custody shown on the original evidence receipt. Defense counsel objected on hearsay grounds. The district court ruled that there was no foundation as to relevance because the prosecutor had not shown that the sample tested was even related to Defendant's case and sustained the objection. Barber was then excused, subject to recall.

**{6}** Barber was recalled the next day and his direct examination continued. Barber explained his role as a technical reviewer, saying that he reviewed the data and formed his own opinion. When asked, "on your review what did you do in particular to these items?" Barber stated, without eliciting any objection:

> In my review, I went through all those steps that we discussed. I checked to see if the description of the evidence was consistent with the evidence received, and that the methods and procedures that he used were

consistent with—and that the data are consistent with—the conclusions that he reached in the end.

The prosecutor then asked Barber, "and based on the data review did you form your own opinion?" Barber replied, "yes" to which the prosecutor asked "what was that?" Defense counsel again objected based on lack of foundation for the opinion and asked to conduct voir dire, which request the district court granted. Defense counsel established that another analyst, Eric Young (Young), had performed the initial work and then presented Barber with the resulting data, Barber did not observe Young's work, and Barber drew a conclusion from the data that was given to him by Young. Defense counsel then stated that he still had the same objection, that there was no foundation for Barber to draw a bottom-line conclusion:

> there's inadequate foundation for him to draw and articulate a conclusion as to what any of this stuff adds up to, he didn't run the test, he wasn't there when the test was run, he didn't have any hands-on role in this analysis, he's got stuff after the fact, and now he's here as kind of a human tape recorder to say what [Young] might say, and I can't cross-examine [Young].

The prosecutor responded by stating, "[Barber] is here as an expert [and] experts can testify to the data and to the procedures and policies[.] . . . He can, as an expert, testify to data, he is not testifying to what [Young] told him. . . . He has drawn an opinion that is consistent with the data presented to him." The district court stated that "*Huettl* seems to say that someone who didn't perform the test can examine the data and arrive

at a conclusion and testify as to that but there's not yet a foundation as to what he looked at," so defense counsel's objection (based on lack of foundation for Barber to draw a conclusion) was sustained.

{7}    The prosecutor asked Barber to explain the data he analyzed. Barber stated that in this case morphine was involved, to which defense counsel again objected, the objection was sustained, and the jury was told to disregard the statement. Then the prosecutor asked Barber to describe the machine and how the machine worked in regards to the analysis in question. Barber explained how the analysis resulted in a printout from the machine, the analyst compares the data in the printout against the data from a certified referent standard for a specific drug to determine if the data from the evidence matches that from the referent, and that he drew his own conclusions based on the data in the report from the machine. Defense counsel then objected. In a bench conference the prosecutor argued that Barber testified that he formed an opinion from the machine not from the analyst and that his conclusion was based on the machine's data. Defense counsel responded by stating that there was not an adequate foundation for this testimony because " I don't know what machine he used. I don't know if he used a sewing machine, I don't know if he used a washing machine." The district court sustained the objection, stating that there was no foundation because the prosecutor had not established what machine was used.

{8}     Barber testified that a gas chromatography mass spectrometer (GCMS) was used and that the GCMS separates out the components of the sample so they can be compared for consistency with the referent. Barber further testified that the machine was working, gas chromatography mass spectrometry is a generally accepted method of analysis of unknown substances, the GCMS generated a report, which he reviewed, and Barber drew his conclusion based on the review of that report. Defense counsel objected and the district court overruled the objection but gave defense counsel permission to voir dire Barber. On voir dire, defense counsel elicited that Barber did not specifically observe Young put the evidence into the GCMS and did not know from his own observation what went into the machine. Defense counsel then repeated the same objection and the district court overruled the objection. Barber then testified:

Prosecutor: So what were those conclusions, based on your review?

Barber: In giving my opinion, just based on the technical review, I can say that *the conclusions that* [*Young*] *reached were consistent with the conclusions that I would reach in reviewing the data.*

Prosecutor: What specifically were your conclusions, not what the analyst, but what did you conclude based on your tech review of the data from the machine?

Barber: Well, just from the data on the machine, I concluded that the data was consistent with methamphetamine being in two items, and morphine being in one item.

(Emphasis added.) Defense counsel did not object to this line of questioning.

{9} The last objections from defense counsel occurred when Barber was asked to identify which bags contained the methamphetamine. While explaining the contents of the bags, Barber stated, "the description that *he* gave" and "*his* description was that there were two[.]" (Emphasis added.) The district court sustained defense counsel's objections to both of these statements. The prosecutor then asked Barber to testify based only on his conclusions and he testified that there was in fact methamphetamine in the two bags. Defense counsel had no questions for Barber on cross-examination and Barber was then excused.

{10} The district court granted a directed verdict on count one (morphine possession), ruling that the morphine may have been located in a common area of the house and the State had not presented sufficient evidence that Defendant exercised control over it. The district court also granted a directed verdict on count two (drug paraphernalia possession), reasoning that the search warrant was for heroin, there was no proof that heroin was in the home, and no proof that the items found in the home were paraphernalia related to use or trafficking of heroin. The prosecutor moved to amend the information in count two to include, as alleged paraphernalia, the baggies found that contained remnants of methamphetamine. However, defense counsel objected and the district court denied the motion as unduly prejudicial.

{11} After hearing all of the testimony the district court and counsel discussed the jury instructions. During this discussion, defense counsel did not request a lesser included offense instruction for the possession of methamphetamine charge. After closing arguments the jury returned a verdict of guilty on count three (possession of methamphetamine). At the sentencing hearing Defendant was sentenced to eighteen months' imprisonment plus one year for habitual offender enhancement, with 330 days of pre-sentence confinement credit.

**DISCUSSION**

**1. Defendant Failed to Raise Any Specific Objection Regarding the Confrontation Clause and Therefore Failed to Preserve the Now Claimed Error**

{12} Defendant argues that his Confrontation Clause rights were violated when Barber, a substitute analyst, testified to the conclusions reached by the primary analyst, Young. The State argues that Defendant failed to preserve the claimed error, that there is no Confrontation Clause violation, and that even if there were a preserved violation the error was harmless.

{13} The bulk of Barber's testimony was based on his own independent conclusions that the substance contained in the two bags was methamphetamine. Barber based his expert opinion on his review of the raw data produced by Young. Under *Huettl*, 2013-NMCA-038, ¶¶ 35-36, Barber's independently derived conclusions based on the data

10

obtained by Young did not violate the Confrontation Clause. Barber was testifying to the conclusions he had formed in analyzing the data, even though that data was created by a different analyst.

{14} However, Defendant challenges Barber's additional testimony that: "In giving my opinion, just based on the technical review, I can say that the conclusions that [Young] reached were consistent with the conclusions that I would reach in reviewing the data." (Consistency Testimony) Defendant argues this evidence is based on conclusions reached by Young, is testimonial, and thus violated the Confrontation Clause and was inadmissible unless defense counsel had the opportunity to cross examine Young. *See id.* ¶¶ 37-38.

{15} Even assuming that Barber's Consistency Testimony violated the Confrontation Clause, Defendant failed to preserve this argument. The preservation rule, requiring a party to object to a claimed error below, is not a mere formality. The purpose of the preservation requirement is to allow the district court an opportunity to cure errors, thereby dispensing with the need for an appeal. *See Vill. of Angel Fire v. Bd. of Cty. Comm'rs of Colfax Cty.*, 2010-NMCA-038, ¶ 15, 148 N.M. 804, 242 P.3d 371. In order to preserve an error for appeal, "it is essential that the ground or grounds of the objection or motion be made with sufficient specificity to alert the mind of the [district] court to the claimed error or errors, and that a ruling thereon then be

invoked." *State v. Lopez*, 1973-NMSC-041, 84 N.M. 805, ¶ 23, 508 P.2d 1292. Objections are preserved for review only if counsel states clearly the grounds for the objection. *See State v. Casteneda*, 1982-NMCA-046, ¶ 10, 97 N.M. 670, 642 P.2d 1129. An objection requires specificity so that the "appellate court does not have to guess at what was and what was not an issue at trial." *State v. Lucero*, 1993-NMSC-064, ¶ 11, 116 N.M. 450, 863 P.2d 1071; *see, e.g.*, *State v. Phillips*, 2000-NMCA-028, ¶¶ 16-23, 128 N.M. 777, 999 P.2d 421 (holding that defendant's general relevancy objection to admission of evidence of drug use, possession, and distribution did not preserve for appellate review an objection to improper admission of evidence of prior bad acts).

{16} More specifically, New Mexico courts have held that Sixth Amendment Confrontation Clause objections must be made with specificity. *See State v. Lucero*, 1986-NMCA-085, ¶¶ 12-17, 104 N.M. 587, 725 P.2d 266 (concluding that the Confrontation Clause issue was not preserved because defendant's objection asked merely for an evidentiary ruling and did not alert the district court to a constitutional error). A defendant's failure to object on Confrontation Clause grounds or general constitutional grounds results in abandonment of the argument on appeal. *State v. Mora*, 1997-NMSC-060, ¶ 47 n.1, 124 N.M. 346, 950 P.2d 789; *see State v. Silva*, 2008-NMSC-051, ¶ 10, 144 N.M. 815, 192 P.3d 1192 (holding that because counsel

12

did not assert that refusing the opportunity to ask questions generally would violate defendant's constitutional rights or specifically infringe his Sixth Amendment or Confrontation Clause rights, the claimed error was not preserved as such), *holding modified by State v. Guerra*, 2012-NMSC-027, ¶¶ 12-16, 284 P.3d 1076.[1]

{17} Defendant never objected on Confrontation Clause grounds to Barber's Consistency Testimony. Indeed, Defendant did not object on any grounds to Barber's testimony specifically about Young's *conclusions*. Instead, Defendant's objections during Barber's examination focused only on the claimed foundational and hearsay shortcomings of Barber's testimony about Young's *testing and data*, all of which *Huettl* holds does not violate the Confrontation Clause. *See Huettl*, 2013-NMCA-038, ¶¶ 35, 39.

{18} Defendant could have objected when Barber referred to the consistency between the data and Young's opinion, or between Young's opinion and Barber's opinion. If Defendant had objected on Confrontation Clause grounds to that testimony, then the district court could have given a curative instruction or otherwise

---

[1] This Court may exercise discretion to review issues not preserved if they involve general public interest, fundamental error, or fundamental rights. Rule 12-321(B) NMRA. However, we will not consider these exceptions if they are not raised on appeal. *See State v. Jason F.*, 1998-NMSC-010, ¶ 10, 125 N.M. 111, 957 P.2d 1145 (declining to apply the preservation exceptions when they were not argued on appeal). Defendant herein has not asserted any of these possible bases for review of his Confrontation Clause argument.

addressed the concern. It is essential that objections be made with sufficient specificity to alert the mind of the district court and invoke a ruling—and remedial action if appropriate—on the claimed error. *Lopez*, 1973-NMSC-041, ¶ 23. We therefore hold that Defendant waived any error in connection with the Consistency Testimony. We decline to address, as unnecessary, the State's alternative argument that any such error was harmless.

**2.      The District Court Did Not Commit Fundamental Error in Not Giving a Lesser Included Offense Jury Instruction**

{19}      Citing *State v. Meadors*, 1995-NMSC-073, 121 N.M. 38, 908 P.2d 731, and *State v. Darkis*, 2000-NMCA-085, 129 N.M. 547, 10 P.3d 871, Defendant contends that possession of drug paraphernalia—that is, the baggies—was a lesser included offense of the methamphetamine charge. On that basis, he argues not only that Defendant had a right to have the jury instructed on that lesser offense but also the district court was obligated to give the instruction whether or not it was requested. Defendant did not request the instruction and in fact vigorously objected when the State sought to amend the paraphernalia charge to include the baggies, which amendment if granted presumably would have resulted in the giving of the instruction. Defendant maintains, however, that because he did not voluntarily, knowingly, and intelligently waive his right to a lesser included offense instruction, the district committed fundamental error in not giving it.

14

{20}     *State v. Boeglin*, 1987-NMSC-002, ¶ 1, 105 N.M. 247, 731 P.2d 943, informs our consideration of Defendant's argument. In that case, the defendant was tried for first degree murder. At multiple points during the trial, the trial court inquired whether the defendant wished to have the jury instructed on second degree murder as well. *Id.* ¶ 4. Defense counsel stated on the record that he recommended that the second degree murder instruction be given. *Id.* ¶ 5. Each time the defendant declined the suggestion, notwithstanding the court's, the prosecutor's, and his own counsel's explanation of the pros and cons of the decision. *Id.* ¶ 6. After the defendant was convicted of first degree murder, he asserted on appeal that the court erred in not giving the second degree murder instruction. *Id.* ¶ 7. Our Supreme Court rejected the argument, reasoning that defendants are free to make, and will be bound by, their own all-or-nothing strategy decisions:

> This Court prefers not to compel defendants to avail themselves of rights they believe may not be advantageous and long has held that defendants' rights, even fundamental constitutional rights, may be waived. . . . We hold that, consistent with the constitutional guarantees of a fair trial, the defendant in a first degree murder prosecution may take his chances with the jury by waiving instructions on lesser included offenses and cannot be heard to complain on appeal if he has gambled and lost.

*Id.* ¶15. Thus, if a defendant waives his or her right to have the jury instructed on a lesser included offense, there is no error when the trial court respects that decision and the instruction is not given. *Id.* ¶ 30.

{21}     Defendant stresses that the *Boeglin* Court noted that, "The record in this case clearly demonstrates that the defendant knowingly, intelligently, and voluntarily waived his right to have the jury instructed on second degree murder." *Id.* ¶ 16. However, the Court did not mandate or even suggest that its decision hinged on this fact. *Id.* ¶¶ 4-19. Moreover, as is reflected in two recent decisions by this Court, which the parties have discussed in their appellate briefs, a defendant's waiver need not be express or on the record. In *State v. Flores*, No. 30,301, mem. op. *1 (N.M. Ct. App. Mar. 13, 2012) (non-precedential), the defendant was convicted of vehicular homicide by reckless driving. On appeal, he argued that the district court erred in not instructing the jury on the lesser included offense of careless driving. *Id.* at *5. We noted that, during closing argument, defense counsel urged that, while the defendant may have been negligent, he was not reckless. *Id.* While there was "no record on appeal of whether a careless driving instruction was requested or voluntarily waived by [the d]efendant, [it appeared from defense counsel's closing argument] that [the d]efendant made a tactical decision to go for 'all or nothing' on the reckless driving charge and did not request the instruction." *Id.* Because "on appeal, we do not second-guess the tactical decisions of litigants and both parties are entitled to the benefits and should be liable for the risks of their respective trial strategies," *id.* (alterations, omissions,

16

internal quotation marks, and citation omitted), we concluded that the district court did not err in not giving the lesser included instruction. *Id.*

**{22}** Similarly, in *State v. Chavez*, No. 34,155, mem. op. ¶¶ 1-2 (N.M. Ct. App. June 16, 2015) (non-precedential), following his conviction for second degree murder, the defendant contended on appeal that the trial court erred in failing to instruct on involuntary manslaughter. We again noted New Mexico's judicial policy of permitting criminal defendants to make strategic decisions to waive rights, including the right to instruct the jury on a lesser included charge. *Id.* ¶ 7. And consistent with the procedural posture of *Flores*, we did not insist on an on-the-record, knowing, intelligent, and voluntary waiver. *Id.* On the contrary, it was sufficient that "[t]he decision not to request the instruction *may* have been a conscious decision attributable to trial strategy, and, if that is the case, we will not second-guess the tactical decisions of counsel below." *Chavez*, No. 34,155, mem. op. ¶ 7 (emphasis added).

**{23}** The procedural posture of the case at bar is similar to that of *Flores*. During both opening statement and closing argument, defense counsel stressed, as a key element of Defendant's case, that the State could not prove that he possessed either the methamphetamine or the paraphernalia. Defense counsel pointed in particular to the fact that not only Defendant but also his tenant and his house visitors could have possessed the methamphetamine that was found in the baggies. This record supports

17

the conclusion that Defendant and his counsel consciously chose to take Defendant's chances on acquittal of the methamphetamine possession charge and forego the potential downside (as well as upside) of permitting the jury the opportunity of convicting him on a drug paraphernalia charge that encompassed the baggies. "[T]he defendant . . . may take his chances with the jury by waiving instructions on lesser included offenses and cannot be heard to complain on appeal if he has gambled and lost." *Boeglin*, 1987-NMSC-002, ¶ 15.

{24} In any event, even assuming the district court therefore erred in not sua sponte giving the instruction, that failure would not rise to the level of fundamental error. Fundamental error in connection with the giving or failure to give a jury instruction must "take from the defendant a right which was essential to his defense and which no court could or ought to permit him to waive[,]" *State v. Garcia*, 1942-NMSC-030, ¶ 24, 46 N.M. 302, 128 P.2d 459, or which "confus[es] or misdirect[s] the jury resulting in a plain miscarriage of justice," *Flores*, No. 30,301, mem. op. at *6. There is no basis for concluding that the jury was confused in this case. Had the jury been persuaded that the State had not proven beyond a reasonable doubt all of the elements —including possession—of the methamphetamine possession charge, it readily could and presumably would have acquitted Defendant. "[T]he failure to have the

18

instruction on the lesser included offense did not preclude the jury from making this determination." *Id.*

**3.      Ineffective Assistance of Counsel**

**{25}**      In the alternative to his argument that the district court erred in failing to give a lesser ncluded offense instruction on drug paraphernalia possession, Defendant argues that his trial counsel's failure to request such an instruction amounted to ineffective assistance of counsel contrary to the Sixth Amendment to the United States Constitution.

**{26}**      In order to establish any entitlement to relief based on ineffective assistance of counsel, a defendant must make a prima facie showing that: (1) counsel's performance fell below that of a reasonably competent attorney; (2) no plausible, rational strategy or tactic can explain counsel's conduct; and (3) counsel's apparent failing prejudiced the defense of the case. *See State v. Herrera*, 2001-NMCA-073, ¶ 36, 131 N.M. 22, 33 P.3d 22.

**{27}**      Defendant asserts that there is no reasonable strategic justification for counsel's failure to request the lesser included offense instruction. We disagree. As discussed above, Defendant and defense counsel reasonably could have elected to pursue an all-or-nothing strategy of seeking acquittal on the methamphetamine charge based on a

determination that the evidence that Defendant possessed the baggies, and thus the methamphetamine, was weak.

{28} Defendant therefore has failed to make a prima facie showing of ineffective assistance of counsel. If Defendant wishes to pursue the matter further, habeas corpus proceedings would be the appropriate venue. *See State v. Baca*, 1997-NMSC-059, ¶ 25, 124 N.M. 333, 950 P.2d 776 ("A record on appeal that provides a basis for remanding to the [district] court for an evidentiary hearing on ineffective assistance of counsel is rare. Ordinarily, such claims are heard on petition for writ of habeas corpus[.]"); *State v. Martinez*, 1996-NMCA-109, ¶ 25, 122 N.M. 476, 927 P.2d 31 ("This Court has expressed its preference for habeas corpus proceedings over remand when the record on appeal does not establish a prima facie case of ineffective assistance of counsel.").

**CONCLUSION**

{29} We affirm Defendant's conviction for possession of methamphetamine.

{30} **IT IS SO ORDERED.**

_____
**HENRY M. BOHNHOFF, Judge**

**WE CONCUR:**

_____

20

**JULIE J. VARGAS, Judge**

_____
**EMIL J. KIEHNE, Judge**